310 P.2d 817

**BUSY BEE BUFFET, Incorporated; Steve Pastis and George Bafaloukos, Appellants,**

v.

**Norman FERRELL and State of Arizona, ex rel.; The Industrial Commission of Arizona, Appellees.**

No. 6184.

Supreme Court of Arizona.

April 30, 1957.

Snell & Wilmer, Phoenix, for Busy Bee Buffet, Inc.

Moore & Romley, Phoenix, for Steve Pastis and George Bafaloukos.

Moore & Moore, Phoenix, for Norman Ferrell.

Donald J. Morgan, Phoenix, for Industrial Commission.

PHELPS, Justice.

We are confronted in this case with two appeals: (1) from a judgment for personal injuries in favor of plaintiff Ferrell (hereinafter called Ferrell) and against the Busy Bee Buffet (hereinafter called Buffet); and (2) from a judgment over in favor of the Buffet and against Steve Pastis for the same amount as that recovered

194

by Ferrell from the Buffet as a result of the alleged negligence of both the Buffet and Pastis.

The Buffet, Incorporated, is a co-tenant with Steve Pastis and George Bafaloukos in the occupation of the premises described as Busy Bee Buffet and Restaurant located at the intersection of First Avenue and Washington Street, in the City of Phoenix, and more particularly in the passageway therein. The Buffet is operated exclusively by the Buffet corporation and occupies the west side of the premises. Pastis and Bafaloukos are the owners and operators of the restaurant located on the east side of the premises and are in full control thereof. Presumably for convenience, the judgment in favor of the Buffet ran only against Pastis, one of the co-partners (reference will hereinafter be made only to Pastis).

At the rear of the Buffet and the Restaurant is a narrow passageway 4 to 5 feet in width leading east from First Avenue, which is used for the benefit of both the Buffet and the Restaurant for the purpose of delivery of groceries, etc., to the Restaurant, and liquors to the Buffet.

There is a heavy double swinging door at First Avenue at the entrance to the passageway. About 4 feet further east is another double swinging door, and 9 feet further along the passageway is a third door with a screen in the upper half of the door. Beyond this door (distance not known) is a trap door covering an opening leading into a basement. Both the Buffet and Pastis had access to this basement and each had certain freezing units in it which required defrosting at intervals. Each defrosted his own unit when necessary. Above the trap door leading to the basement, was a small electric light which was located 5 to 8 feet above the door. The trap door extended across within one foot of the entire width of the passageway and was approximately 2 inches above the level of the concrete floor of the passageway. (East of this trap door a few feet was a fourth opening with no door shutter but which had a door sill also rising an inch or an inch and one-half above the level of the floor). The undisputed evidence is that the light in the passageway was quite dim and could scarcely be seen through the greasy screen of the third door, and the passageway west of the screen door was not lighted at all.

On the morning that Ferrell was injured, and prior to his arrival at defendants' place of business, Pastis opened the trap door leading into the basement where he had to go to defrost the refrigeration units. After opening the trap door Pastis returned to the restaurant to procure a flashlight, and placed on the west side of the open basement door, two wooden milk boxes 12x18 inches in size, one upon top of the other, and placed sticks (broom-handles) on the east side thereof. This constituted the

only warning or protection to any persons using the passageway against the danger he had created.

While Pastis was absent in search of the flashlight Ferrell entered the passageway at the First Avenue entrance and proceeded with his delivery to the Buffet, two kegs of beer (weighing 169 pounds each) upon a two-wheel push truck. Because of the doors through which passage was made, and because of the elevated door sills and the elevated trap door over which the heavy kegs of beer had to be hauled, Ferrell had to pull the truck instead of pushing it, and, in order to do so he had to walk backward throughout the length of the passageway in making delivery to the Buffet. Ferrell had been delivering beer to the Buffet at least twice a week for several years and had never seen the trap door open and did not know that it was a trap door or that there was a basement beneath it, but supposed the boards had been placed there to cover concrete flooring which was defective in some manner.

On the morning of the injury Ferrell did not look back after passing through the screen door, first, he said because he was thoroughly familiar with the passageway there, and secondly, because he was busy watching the side walls of the passageway along the sides of which empty beer kegs, boxes and sacks of potatoes were frequently placed. He stated he had to do this so he could get through safely without spilling his load or running into the things stacked beside the walls. When he reached what he later discovered to be the trap door, he raised his foot to step up on the wooden structure and when he put his foot down there was nothing upon which to step. Consequently, he fell through the opening into the basement some 10 feet below, one of the beer kegs falling on top of him. He suffered severe injuries as a result thereof, and it is upon these facts that Ferrell's judgment rests and which form the primary basis for these appeals.

The Buffet has appealed from said judgment and from the order of the trial court in denying its motion for judgment, notwithstanding the verdict, or, in the alternative, for a new trial.

Pastis and Bafaloukos have appealed from the judgment against Pastis, and in favor of the Buffet, and from (1) the order of the court denying their motion for judgment in their favor upon the verdict; (2) from the order denying their motion to set aside that portion of the verdict returned awarding to the Buffet the same sums awarded to Ferrell against it; and (3) from the order of the court denying their motion to set aside said verdict, and for judgment in their favor as to the Buffet, and from the trial court's order denying their motion for a new trial.

We will first consider the questions raised in the Buffet's appeal.

■ It complains that the court erred in refusing to grant its motion for judgment n. o. v. or in the alternative, for a new trial, for the reason that (1) there was no evidence of any negligence on the part of the Buffet; (2) there was no evidence that the Buffet knew or by the exercise of reasonable care should have known, that Pastis had created or might create a dangerous condition in the passageway; and (3) that the danger existed for so short a period the Buffet could not be charged with constructive notice thereof. We are of the view that there is no merit to these claims. There was ample evidence of negligence on the part of the Buffet to go to the jury as we shall hereinafter show. It is the universal rule of law that one engaged in business is obligated to provide a reasonably safe condition of its premises for its invitees. Glowacki v. A. J. Bayless Markets, 76 Ariz. 295, 263 P.2d 799; S. H. Kress & Co. v. Evans, 70 Ariz. 175, 218 P.2d 486, 488. Ferrell was clearly an invitee of the Buffet in making delivery of beer for its use in its business.

■■ When the Buffet leased to Pastis and Bafaloukos a portion of the premises for the purpose of conducting a restaurant business therein with equal right with the Buffet to use the passageway in the rear, it became a co-tenant therein with Pastis and Bafaloukos. The evidence was not disputed that under the terms of the lease the lessees had equal rights with the Buffet to the use of the passageway for delivery purposes and equal access with the Buffet to the basement and equal right to its use, and that by reason of the fact that both the Buffet and Pastis had refrigeration units located therein, both Pastis and the Buffet would necessarily be required to open the trap door at intervals to gain entrance to the basement in order to defrost such freezing units.

Under such circumstances the very existence of the trap door (without adequate guard rails or warnings of some kind), and the certainty that it would be open at times, constituted a potential danger at all times and an actual danger when open and unguarded. Therefore, the Buffet owed the duty to its invitees to adequately warn them of the existence and nature of such potential or actual danger. This it did not do. In addition to the testimony of Ferrell two witnesses testified they had delivered liquors through that passageway for a long period of time prior to Ferrell's injury and did not know that the wooden covering lying across the concrete passageway was a trap door, or that there was a basement beneath it. All of the evidence is to the effect that the passageway was dimly lighted at the point where the trap door is located. We therefore hold that the court did not err in denying the Buffet's motion for judgment n. o. v. or, in the alternative, for a new trial.

■ Before proceeding to discuss the questions raised by Pastis in his appeal from

the judgment over against him in favor of the Buffet it will be noted that, by stipulation of counsel for Pastis and the Buffet neither the third party complaint filed by the Buffet nor the answer thereto were read to the jury, nor were any written instructions relative to the issues therein raised requested by either of the parties and none were given. The Buffet offered no evidence in support of its claim over against Pastis. It did ask Pastis if he saw the milk boxes after the accident and where they were.

It is claimed by Pastis that the court, in submitting a verdict to the jury over against him on its third party complaint in the event the jury returned a verdict against the Buffet, amounted to an instructed verdict against him and constituted reversible error. The answer to this is that, by the stipulation of counsel at the trial and their conduct relative to this issue, counsel for both defendants clearly indicated they then considered it purely a question of law as to the right of the Buffet to recover over against Pastis in the event plaintiff prevailed. No intimation to the contrary was given to the jury. Certainly if Pastis was guilty of negligence, then as a matter of law his negligence under the undisputed facts, was a proximate cause of the injury to Ferrell.

We have shown above that the Buffet was guilty of negligence in failing to maintain the passageway in a reasonably safe condition for those making deliveries to it.

We believe we should now discuss briefly the difference between the character and kind of *negligence* of the Buffet and that of Pastis. The term "difference in kind and character" between the negligence of the Buffet and Pastis must not be confused with "comparative negligence" or "degrees of negligence."

It will be observed that the Buffet owed a positive legal duty to Ferrell to keep the passageway reasonably safe for his use in making deliveries of beverages to it. So long however as the trap door was closed the basement beneath the passageway constituted no actual peril whatever. It was only when the trap door was open and inadequately guarded by failure to place proper barricades on each side of the opening, or something equally effective, that the actual danger to Ferrell was created. The Buffet was guilty of no active fault in creating the danger to Ferrell. Its negligence was passive or static. Its negligence was incapable of producing injury to any one at that time except through the active negligence of another. Pastis, in opening the trap door and leaving it unguarded, was the immediate cause of Ferrell falling through the opening and sustaining the injuries which form the basis of this litigation.

It will be further observed that the *liability* of the Buffet to Ferrell is based upon an entirely different kind or character

of wrong than that of Pastis. The liability of the Buffet is based upon its positive legal duty to Ferrell to maintain the passageway in a reasonably safe condition for his use. It did not actively participate in the wrong which was the immediate cause of the injury to Ferrell. It was Pastis, a co-tenant with the Buffet, who, acting independently and without the knowledge of the Buffet, primarily caused the injury to Ferrell. It was his act in opening the trap door to the basement and leaving it unguarded which rendered the passageway unsafe for the use of Ferrell. His act did more than render it unsafe, it rendered it highly dangerous. It constituted gross and wilful negligence for which he was liable to Ferrell either as an invitee or a licensee. There was no dispute in the evidence on this point and reasonable men could draw no other inference from his act. Scott v. Scott, 75 Ariz. 116, 252 P.2d 571.

In the light of these facts Pastis became primarily liable to Ferrell for the injuries he sustained and the Buffet is only secondarily liable. Blakely Oil Co. v. Crowder Cattle Co., 80 Ariz. 72, 292 P.2d 842; Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 24 A.L.R.2d 319, 323, 324; Fidelity & Casualty Co. of New York v. Federal Express, 6 Cir., 136 F.2d 35, 40. In the latter case the court points out the different factual situations in which the issue of primary and secondary liability may arise as between joint tort-feasors. It reads as follows:

"From the cases and authorities to which reference has been heretofore made, the rule has been variously expressed that, as between joint tort-feasors, the issue of primary and secondary liability only arises: where they are not in pari delicto as between themselves; where one tort-feasor is not guilty of the same fault as the other, although both are liable to the injured party; where the negligence of the joint tort-feasors is not of the same character; where they do not commit the same wrong; where one is not a wrongdoer as between himself and the other; where there is no joint action in causing the injury; where they do not act together in committing the wrongful act; where one is not guilty of the same tortious delinquency; where the negligence of one is only imputed or constructive; where one is liable by construction of law on account of some omission of a duty of protection or care; and where one tort-feasor is liable to a third party by reason of a legal relationship to the other tort-feasor, or because of a condition brought about by the latter, in the creation of which the other has not joined. It is also said that where one is the 'active' tort-feasor, and the

other, the 'passive'—or where the primary or active fault rests upon one tort-feasor, he, as the active tort-feasor, is liable to the other. But this is only another way of expressing the same rule as otherwise above stated. It does not mean that the joint tort-feasor whose negligence is the lesser can have indemnity from the other for damages caused by the concurring negligent act of both."

We hold the facts in the instant case fall squarely within the above category of joint torts creating a primary and secondary liability. This being true the assignments of error presented by Bafaloukos and Pastis as basis of their appeal are without merit. The trial court did not err in rendering judgment in favor of the Buffet and against Pastis as indemnity for the full amount of the judgment rendered against it.

It should be observed at this point that, strictly speaking, the Buffet was not entitled to maintain its action as a third party plaintiff in this case under the provisions of Rule 14 of our Rules of Civil Procedure. That rule is applicable only as against persons not a party to the action and, where the claim of the third party plaintiff arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third party plaintiff.

The Buffet's remedy was under the provisions of Rule 13(g) of the Rules of Civil Procedure, 16 A.R.S., providing for a party-defendant to file a crossclaim against a co-party defendant arising out of the transaction or occurrence. A third party claim may not be maintained against one already a party, Moore's Federal Practice, Vol. 3, Cross-Claims 13(g) 13.34, p. 91; Almacenes Fernandez, S.A. v. Golodetz, 2 Cir., 148 F.2d 625.

However, under the provisions of Federal Rules of Civil Procedure, Rule 8(f), 28 U.S.C.A. (our rule 8(g) of the Rules of Civil Procedure): "All pleadings shall be so construed as to do substantial justice." The courts in construing Federal Rule 8(f) have held that where a pleading is susceptible of a construction, either in favor of or against the pleader, it must be so construed as to do substantial justice. Osland v. Star Fish & Oyster Co., 5 Cir., 1939, 107 F.2d 113, and in the case of Creedon v. Bowman, D.C.Pa.1948, 75 F.Supp. 265, it was held that a motion for summary judgment could either be treated as such or as a motion to dismiss the complaint, and, in De Vito v. Hoffman, 91 U.S.App.D.C. 263, 199 F.2d 468, a pleading denominated a "supplemental pleading" was treated as a "counter claim." Therefore, under the liberal construction rule above enunciated we do not hesitate to hold that the Buffet's

third party complaint may be considered as a cross-claim as it contains all of the essential allegations to state such a claim.

This leaves one other question for our disposition. Both the Buffet and Pastis argue that the verdict of the jury does not justify the judgment entered thereon. There were four verdicts submitted to the jury, of various shades and variations as it were, and it is not surprising that the jury did not select the verdict which most clearly expressed a finding of negligence on the part of both defendants. However, the dire result thereof claimed by counsel does not follow at all.

We construe the verdict as rendered as a finding by the jury that both the Buffet and Pastis were negligent and both were liable to Ferrell in the full amount of the verdict, and that Pastis was primarily liable and the Buffet secondarily liable, and that the Buffet was entitled to indemnity as against Pastis. We believe this conforms with the judgment entered and the intention of the trial court relative thereto.

As so construed the judgment is affirmed.

UDALL, C. J., and WINDES, STRUCKMEYER and LA PRADE, JJ., concurring.