**Angus J. DePINTO, Appellant,**

v.

**Hjalmar B. LANDOE, Francis I. Sabo and Edwin B. Pegram, Appellees.**

No. 22343.

United States Court of Appeals
Ninth Circuit.

May 9, 1969.

Joseph S. Jenckes, (argued) of Evans, Kitchel & Jenckes, Herbert Mallamo, Phoenix, Ariz., for appellant.

Joseph B. Gary, (argued) of Landoe & Gary, Bozeman, Mont., for Landoe.

Thomas I. Sabo, Bozeman, Mont., for Sabo & Pegram.

Before BARNES and HAMLEY, Circuit Judges, and SMITH, District Judge*.

HAMLEY, Circuit Judge:

This is a stockholder's diversity derivative action. It was originally brought on behalf of United Security Life (United), an Arizona stock insurance corporation, by John S. Gorsuch, a stockholder of that company. Gorsuch sought to recover, for United, the value of assets of United which had been transferred on October 18, 1957, to American Security Investment Company (American). The suit was brought against Angus J. DePinto, Hjalmar B. Landoe, Francis I. Sabo, Edwin B. Pegram and several other personal and corporate defendants.

Following a trial, judgment was entered in favor of United and against twelve defendants. The award against DePinto was $314,794.19. On appeal, we reversed and remanded for further proceedings. Niesz v. Gorsuch, 9 Cir., 295 F.2d 909. The suit was then reconstituted as one on behalf of Provident Security Life Insurance Company (Provident), another Arizona stock insurance corporation, brought by Albert J. Doig against the same defendants.[1]

The gravamen of Doig's complaint was the same as that of the original complaint. In the remanded proceedings, however, defendant DePinto filed cross-claims against the other defendants, seeking indemnity from them for any liability DePinto might incur as a result of the derivative action.

The trial court then dismissed DePinto's indemnity cross-claims on the ground that he did not qualify as having only secondary liability, readopted its original findings of fact and reaffirmed its original decision. Defendants DePinto, Landoe, Sabo, Pegram and Elmer W. Duhame appealed. We again reversed and remanded, holding in part that defendants were entitled to a jury trial. While the correctness of the dismissal of DePinto's cross-claims was before us on that appeal, we did not pass upon that question. DePinto v. Provident Security Life Insurance Company, 9 Cir., 323 F.2d 826.[2]

After this second remand, the executors of the estate of defendant Duhame entered into a settlement with plaintiff and the estate was dropped as a defendant. This left DePinto, Landoe, Sabo and Pegram as the only defendants still contesting plaintiff's claims. The trial court then severed the cause as to defendants Sabo, Pegram and Landoe, and ordered the case to proceed to trial against DePinto. After trial judgment was rendered against DePinto and in favor of Provident in the amount of $314,794.19. We affirmed. DePinto v. Provident Security Life Insurance Company, 9 Cir., 374 F.2d 37.

---

* The Honorable Russell E. Smith, United States District Judge for the District of Montana, sitting by designation.

1. United had merged with Provident after the original suit had been commenced. Doig was a stockholder of Provident and a former stockholder of United.

2. With reference to this and other questions presented but not disposed of on that appeal, we said:

   "There are also certain other questions presented on this appeal.31

   (31 We refer to the questions of whether the judgment is excessive as to DePinto and Duhame to the extent of 38.-79% because of the cancellation of American's stock held by United; whether the judgment is excessive as to DePinto in the amount of six per-cent because of Duhame's ownership of certificates of contingent interest; whether Provident is entitled to six per-cent interest on the award from October 18, 1957; *and whether DePinto and Duhame are entitled to indemnity against Pegram, Sabo, Landoe and certain other defendants.*) But they are not of a kind which requires decision now in order to provide guidance as to the remanded proceedings. Nor will they be presented here again unless plaintiff prevails in the further proceedings and then only if the judgment is of the same kind as that which is before us on this appeal. If these questions do arise again, they can best be dealt with on the record for that appeal." (323 F.2d, at 838–839) (Emphasis supplied.)

DePinto then moved in the trial court to have his indemnity cross-claims set for trial. Landoe, Sabo and Pegram responded with motions for summary judgments dismissing the cross-claims as to them on the grounds of res judicata and failure to state a claim. These motions were granted and judgments were entered dismissing DePinto's cross-claims as to Landoe, Sabo and Pegram. De-Pinto then took this appeal.[3]

The trial court dismissed DePinto's cross-claims against appellees on two grounds. One of these was that the previous dismissal of these cross-claims, after the first remand, had been assigned as error on the second appeal and since, on the second appeal, such dismissal was not held to be erroneous, the dismissal has become the law of the case and is res judicata.

■ We hold, however, that since, in our decision on the second appeal, we expressly reserved the question of whether the cross-claims should have been dismissed on motion for summary judgment,[4] that decision did not establish the original dismissal of the cross-claims as the law of the case or give it res judicata finality. Appellees concede as much in their brief on this appeal. They argue, however, that under the substantive law of Arizona, the trial court's dismissal of the cross-claims prior to the second appeal is res judicata.[5]

As noted above, the cross-claims were originally dismissed before the second appeal, reported in 323 F.2d 826. At the

trial conducted after the second appeal, the jury found that DePinto's conduct constituted negligence and a breach of fiduciary duty. We upheld this jury determination on the third appeal, reported in 374 F.2d 37, 44. Appellees contend that the determination of DePinto's negligence and breach of fiduciary duty also established, under principles of res judicata, that DePinto has no valid claim for indemnity against Landoe, Sabo and Pegram.

This is true, however, only if we assume the correctness of appellees' contention that DePinto's negligence and breach of fiduciary duty precluded him from obtaining indemnity from the other defendants. The trial court so held before the second appeal. As stated above, we did not pass upon the correctness of that ruling on the second appeal, but reserved the question. Nor was the issue decided in connection with the third appeal reported in 374 F.2d 37.[6] It follows that while the matter of DePinto's negligence and breach of fiduciary duty is now res judicata, the question of whether he is precluded from obtaining indemnity is still open in this court. It is, indeed, the principal issue on this appeal.

In its original order dismissing the indemnity cross-claims the district court held that, with regard to his liability to Provident, DePinto was a primary joint tort-feasor and that under Arizona law he is precluded from obtaining contribution from other joint tort-feasors. The district court adhered to this

---

3. Plaintiff's claims against Landoe, Sabo and Pegram, and DePinto's cross-claims against other defendants, were still pending when the judgments dismissing De-Pinto's cross-claims against Landoe, Sabo and Pegram were entered. However, the latter were rendered final, thereby permitting this appeal, when the trial court made a determination and direction as provided for in Rule 54(b), Federal Rules of Civil Procedure.

4. See note 2, above.

5. Since this is a diversity action arising in Arizona, the district court and this court must apply the substantive law of

that state. See 28 U.S.C. § 1652 (1964); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

6. In speaking of the "first," "second" and "third" appeals, we refer to the chronological order of appeals directly relevant to the issues now before us. This derivative litigation has, in fact, spawned several other appeals. See Provident Security Life Insurance Company v. Gorsuch, 9 Cir., 323 F.2d 839; DePinto v. Provident Security Life Insurance Company, 9 Cir., 374 F.2d 50; and other appeals referred to in DePinto v. Provident Security Life Insurance Co., 9 Cir., 374 F. 2d 37, 40, n. 2.

view as its second ground for granting the subsequent summary judgment now under review, dismissing DePinto's cross-claims for the second time.

In our opinion, however, DePinto's liability to Provident was not that of a tort-feasor, joint or otherwise. His liability to Provident arose from the fact that, as a director of Provident's predecessor, United, he negligently failed to resist a raid on United's assests by a group in control of American. Instead of so resisting, he resigned as a director of United, thereby incapacitating himself from effectively opposing that wrongful action. See DePinto v. Provident Security Life Insurance Company, 9 Cir., 374 F.2d 37, 41–44. DePinto's wrongful conduct, although occasioned by negligence ordinarily associated with tort liability, in actuality constituted a breach of his fiduciary duty to the corporation.

■■ In Arizona, as elsewhere, a director of a corporation owes a fiduciary duty to the corporation and its stockholders. Nordin v. Kaldenbaugh, 7 Ariz. App. 9, 435 P.2d 740, 744; Hatch v. Emery, 1 Ariz.App. 142, 400 P.2d 349, 353; Steinfeld v. Nielsen, 15 Ariz. 424, 139 P. 879, 889. While some courts have analyzed the relationship of director and corporation in terms of agency,[7] others have adopted a trust analogy.[8] Arizona follows the latter course. Hatch v. Emery; Kenton v. Wood, 56 Ariz. 325, 107 P.2d 380, 383; Steinfeld v. Nielsen. It follows that DePinto's breach of fiduciary duty is to be treated as a violation of duties under an implied or constructive trust, instead of under the common law of torts.

DePinto's right to obtain indemnity from Landoe, Pegram and Sabo for their alleged derelictions therefore arises not from the existence of a joint tort-feasor relationship he shares with them, but by

reason of the consensual relationship between DePinto and United, out of which DePinto's fiduciary duty to United arose. Upon the theory of subrogation or upon principles analogous thereto, he stands in the place of United. He is entitled to recover from Landoe, Sabo and Pegram (assuming that they participated in the raid on United) what they should have paid to United's successor and what he, in effect, has paid in their behalf.

■ However, if we are mistaken in this analysis, and DePinto should, under Arizona law, be regarded as a tort-feasor with respect to the breach of his fiduciary duty, we are nevertheless of the view that, under the particular circumstances of the case, his status as a tort-feasor does not bar him from obtaining indemnity.

■ It is true that in Arizona, in conformity with the general rule, contribution or indemnity is not permitted among joint tort-feasors. Blakely Oil, Inc. v. Crowder, 80 Ariz. 72, 292 P.2d 842, 843. *Blakely* provides a classic example of what is meant by a joint tort-feasor relationship. Blakely's employee was negligent in driving too fast along a highway where cattle were observed grazing. Crowder was also negligent in permitting his cattle to stray upon the highway. These two acts of negligence concurred in causing the Blakely vehicle to collide with a cow, as a result of which an automobile driven by the original plaintiff in that case was struck. Under these circumstances, the court, held, the Blakely driver and Crowder were "primary joint tort-feasors" and Blakely therefore could not obtain contribution or indemnity from Crowder.

In the case before us, however, DePinto's wrongful act was not joint and concurrent with the allegedly wrongful acts of Landoe, Sabo and Pegram. As stated above, the damage which Provi-

---

7. Farmer v. Standeven, 10 Cir., 93 F.2d 959, 961; Hayes v. Belleair Development Co., 120 Fla. 326, 162 So. 698, 700.

8. Robinson v. Linfield College, E.D.Wash., 42 F.Supp. 147, 155, aff'd, 9 Cir., 136

F.2d 805; Bainbridge v. Stoner, 16 Cal. 2d 423, 106 P.2d 423, 426; Mathews v. Fort Valley Cotton Mills, 179 Ga. 580, 176 S.E. 505. See also, 3 Fletcher, Cyclopedia Corporations (1965 Rev.Vol.) § 847, pages 194–195.

dent suffered was occasioned by the transfer of assets from its predecessor, United, to American. This occurred after DePinto had severed all connection with United. He neither directly participated in that wrong nor gained any advantage therefrom.

It is evident therefore that, as compared to the concurrent negligence of the employees of Blakely and Crowder, contributing to the accident which harmed the plaintiff in the *Blakely* case, DePinto's wrongful conduct was inactive in nature, different in character, and prior in time.

This distinction finds support in the rationale of Busy Bee Buffet v. Ferrell, 82 Ariz. 192, 310 P.2d 817. In that case the corporation (Buffet) was a co-tenant with Steve Pastis and George Bafaloukos in the occupation of premises used as a restaurant. As a co-tenant of the premises, the Arizona court held, Buffet owed a duty to those making deliveries to provide adequate warning of the existence of a trap door in a passageway.

On the occasion in question, Pastis opened the trap door and did not provide adequate warning of the hazard. Norman Ferrell, making a delivery, fell through the open door into the basement and was injured. Ferrell recovered judgment against Buffet and Buffet recovered a judgment over against Pastis on the theory of indemnity. Affirming the judgment for indemnity the Arizona Supreme Court held that since Buffet's negligence was passive, and that of Pastis was active and the immediate cause of Ferrell's injury, Pastis was primarily liable to Ferrell. Buffet, being only secondarily liable, was entitled to indemnity. In so concluding the Arizona court quoted and applied the tests stated in Fidelity & Casualty Co. of New York v. Federal Express, 6 Cir., 136 F.2d 35, 40.

The comparative quality of the wrong for which DePinto was held liable, and the wrongs with which Landoe, Sabo and Pegram are charged, is closely akin to the "passive"-"active" qualities of the wrongs of Buffet and Pastis. Applying the tests of *Fidelity & Casualty Co. of*

*New York,* they are, in our opinion respectively, secondary and primary in nature.

Appellees point out that some of the language of *Busy Bee Buffet* has seemingly been given restricted scope by the Arizona Court of Appeals in Thornton v. Marsico, 5 Ariz.App. 299, 425 P.2d 869. We think, however, that the essence of the *Busy Bee Buffet* rationale remains undisturbed. In fact, in the more recent Arizona case of Chesin Construction Co. v. Epstein, 8 Ariz.App. 312, 446 P.2d 11, 17, another panel of the Arizona Court of Appeals refers to, and applies, the rationale of *Busy Bee Buffet.* See also, Sherk, Common Law Indemnity among Joint Tort-Feasors, 7 Ariz.L.Rev. 59, 69–70.

It is true that DePinto's liability to Provident was "primary" in the limited sense that Provident could sue him in the first instance because of his breach of fiduciary duty. This was also true in *Busy Bee Buffet.* In both *Busy Bee Buffet* and *Blakely* we think the Arizona Supreme Court made it clear that it used the "primary"-"secondary" dichotomy as a means of differentiating one whose active wrongful conduct caused the damage from one whose wrongful conduct was not active, but rather consisted in a failure to fulfill a legal duty of preventing another from committing a wrong. DePinto is in the latter position.

Landoe has been careful to point out in appellees' brief that he occupies a different position from that of Sabo or Pegram. While the latter two became directors of United before its assets were transferred to American, Landoe was at no time a director of United.

This is a circumstance to be considered by the district court in the remanded proceedings. It is sufficient to note here that while the alleged liability of Sabo and Pegram rests in part upon an asserted breach of their fiduciary duties as directors of United, Landoe (and also Sabo and Pegram) were charged by Provident with other wrongs, such as assisting other directors of United to breach their fiduciary duties, engaging in a con-

spiracy to defraud United, unjustly enriching themselves at the expense of United, and unlawfully converting assets of United to their own use or benefit.

Reversed and remanded for further proceedings consistent with this opinion.

Judge BARNES concurs in the result.