498 P.2d 502

**TRANSCON LINES, a corporation, and Oris Clayton Reed, Appellants,**

v.

**Harry Albert BARNES, Appellee.**

**No. 1 CA–CIV 1295.**

Court of Appeals of Arizona,
Division 1,
Department B.

June 22, 1972.

Rehearing Denied July 24, 1972.

Review Denied Sept. 26, 1972.

Snell & Wilmer by H. William Fox and James A. Honer, Phoenix, and Toff, Gordon & Royce by Melville A. Toff, Mountain View, Cal., for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by John H. Westover, Phoenix, for appellee.

HAIRE, Chief Judge, Division 1.

On this appeal we are required to consider the question of whether a tortfeasor who initially causes serious injuries is entitled to indemnity from a negligent doctor when death subsequently results.

This is an appeal by Transcon Lines and Oris Clayton Reed, defendants below, from a judgment denying their cross-claim for indemnity.

Plaintiffs, in the action below, instituted a wrongful death action which arose out of the following sequence of events. On or about February 27, 1966, Rose Bates,

decedent, suffered injuries as a result of a collision of a vehicle in which she was a passenger and a Transcon Lines truck driven by Oris Clayton Reed. Mrs. Bates was taken from the scene of the accident to the Williams Hospital where, suffering severe back and neck injuries and some paralysis, she was placed under the care of Harry Barnes, M.D.

Some 49 days later, on April 15, 1966, Mrs. Bates was taken to the Williams Airport and placed on an airplane for transportation to her home in Oakland, California, where, in Dr. Barnes' opinion, she might make better recovery during the anticipated lengthy convalescent period. During the flight, approximately two hours after take-off, she suddenly expired. The cause of death, according to an autopsy performed on her, was bronchopneumonia.

The above sequence of events led to the filing of a wrongful death action against Transcon, Oris Clayton Reed, Dr. Barnes and the hospital and medical attendants that treated and cared for Mrs. Bates during her hospital stay. Appellants Transcon and Oris Clayton Reed (hereafter "Transcon" or "appellants") filed a cross-claim for indemnity against all other defendants. Prior to trial appellants stipulated to their negligence in causing the auto accident, but they expressly stated that they were not stipulating to any liability for Mrs. Bates' death.

Later in the proceeding the trial court ruled that Transcon was responsible as a matter of law for any negligent treatment rendered by Dr. Barnes or the other medical defendants.

While the issue of appellants' liability for the wrongful death consequences was repeatedly raised in the trial court, the court did not deviate from its ruling that appellants were liable, as a matter of law, for any damages caused by defendant Barnes et al., and appellants have not raised this issue as error in the present appeal. Rather, they challenge the judgment of the court denying their cross-claim for indemnity.

After the court's ruling as to the liability of Transcon for the negligence of Barnes et al., the trial proceeded as to proof of medical malpractice and proof of wrongful death damages. Thereafter the jury returned a verdict in the amount of $125,000 in favor of plaintiffs and against Dr. Barnes, Transcon Lines and Reed. Several months later the trial judge signed a judgment dismissing appellants' cross-claim for indemnity. The relevant portion of that judgment reads as follows:

"The Court proceeded to hear the evidence on behalf of the Defendants Transcon Lines and Oris Clayton Reed upon their crossclaim and having heard the same determined *that there was no issue to be submitted to the jury upon the Crossclaim.*

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Crossclaim of the Defendants Transcon Lines and Oris Clayton Reed against the Defendants Harry Albert Barnes, Lenore Reed, Edward L. Ely and Williams Hospital be and the same is *hereby dismissed* and the Crossclaimants Transcon Lines and Oris Clayton Reed take nothing by way thereof." (Emphasis added).

Appellants' notice of appeal indicates that they appeal from this judgment only. Their claim for indemnity is grounded in a two-step argument. First, they claim that the liability imposed on them for Dr. Barnes' negligence and the ensuing death of Mrs. Bates arose out of a positive rule of law requiring that result, and not upon a finding that their negligence actually caused Mrs. Bates' death. Second, they claim that such a large difference of negligence exists here that under Arizona law they can only be regarded as "passive" or "secondary" tortfeasors, and thus they are entitled to indemnity against Dr. Barnes, the "active" or "primary" tortfeasor. In the same vein

**430**

appellants point out that this was an action for wrongful death only; therefore, they argue, all the damages awarded by the jury were damages which were caused by the malpractice of Dr. Barnes, and were fixed on them only by reason of the imputed liability required by the Restatement of Torts.[1]

Alternatively appellants urge that the equitable nature of indemnity requires restitution in this case, because they had no part in the selection of the doctors or hospital, no control over the direction or conduct of the hospital, nothing to do with the treatment and/or care of the decedent and nothing to do with the decision to transfer the decedent from the hospital to Oakland, California. In short, they argue that they had no opportunity to protect themselves against the negligence of Dr. Barnes, and thus that they are entitled to indemnity. In support of this position they cite a California case, Herrero v. Atkinson, 227 Cal.App.2d 69, 38 Cal.Rptr. 490 (1964), which allowed indemnity under similar circumstances.

Appellee argues that the "active-passive" "primary-secondary" rationale is inapplicable here, because it evolves from a case totally different on its facts, and because appellants here were negligent tortfeasors. Appellee therefore concludes that the Restatement of Restitution [2] governs this case, and that the Restatement allows indemnity between successively negligent tortfeasors, apart from certain specific situations described, only where the first actor is ordinarily negligent and the second actor is wantonly negligent.

The leading case on indemnity in Arizona, and the case from which appellants derive their "primary-secondary", "passive-active" theory, is Busy Bee Buffet,

Inc. v. Ferrell, 82 Ariz. 192, 310 P.2d 817 (1957). In that case plaintiff Ferrell was making a beer delivery to premises owned by defendant Buffet. He fell through a trap door left open by defendant Pastis, a co-tenant of the building. Plaintiff received a judgment against both defendants, and the Buffet received an indemnifying judgment over against co-defendant Pastis. On appeal, the Arizona Supreme Court recognized that the Buffet had breached its duties to maintain the premises in a reasonably safe condition and to warn invitees of the danger of its trap door. Nevertheless the court found Pastis "primarily liable" and the Buffet only "secondarily liable" and sustained the indemnity judgment awarded to the Buffet against Pastis.

In arguing that a finding of liability imputed by law is a basis for allowing indemnity if other requirements are met, appellants in this case point to the following language in Busy Bee, taken from Fidelity & Casualty Co. of New York v. Federal Express, 136 F.2d 35, 41 (6th Cir. 1943):

"    . . . as between joint tort-feasors, the issue of primary and secondary liability only arises: . . . *where one is liable by construction of law* or on account of some omission of a duty of protection or care; and where one tort-feasor is liable to the third party by reason of a legal relationship to the other tort-feasor, *or because of a condition brought about by the latter, in the creation of which the other has not joined.*" 82 Ariz. at 198, 310 P.2d at 821. (Emphasis added).

The dictum of Busy Bee notwithstanding, the holding of that case as to liability

---

Section 457, Restatement of Torts 2d provides:
"If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which

the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner."

2. *See* Restatement of Restitution §§ 89–98 and 102.

clearly was grounded on the last mentioned principle. Said the court:

> "The liability of the Buffet is based upon its positive legal duty to Ferrell to maintain the passageway in a reasonably safe condition for his use. It did not actively participate in the wrong which was the immediate cause of the injury to Ferrell. It was Pastis, a co-tenant with the Buffet, who, acting independently and without the knowledge of the Buffet, primarily caused the injury to Ferrell. It was his act in opening the trap door to the basement and leaving it unguarded which rendered the passageway unsafe for the use of Ferrell. His act did more than render it unsafe it rendered it highly dangerous. It constituted gross and wilful negligence for which he was liable to Ferrell either as an invitee or a licensee." 82 Ariz. at 198, 310 P.2d at 821. (Emphasis added).

With regard to appellants' argument that they qualify as "passive" or secondarily liable tortfeasors, in that they did not participate in the acts which caused Mrs. Bates' death, the following language in Busy Bee, comparing the negligence of the Buffet and Pastis is relevant:

> "The Buffet was guilty of no active fault in creating the danger to Ferrell. Its negligence was passive or static. Its negligence was incapable of producing injury to any one at that time except though the active negligence of another. Pastis, in opening the trap door and leaving it unguarded, was the immediate cause of Ferrell falling through the opening and sustaining the injuries which form the basis of this litigation." 82 Ariz. at 197, 310 P.2d at 820–821.

We are not convinced that these statements in Busy Bee are applicable to the case at hand. The "primary-secondary", "active-passive" language used therein is largely conclusory, and has been the source of much criticism by legal writers. *See* Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa L.Rev. 517 (1952); Leflar, Contribution and Indemnity Between Tortfeasors, 81 U. Pa.L.Rev. 130 (1932); Sherk, Common Law Indemnity Among Joint Tortfeasors, 7 Ariz.L.Rev. 59 (1965). Moreover, as Sherk demonstrated in the last cited article, the case most heavily relied upon in Busy Bee to support its theory of indemnity impliedly excluded concurrently negligent tortfeasors from the class of persons entitled to indemnity. The Busy Bee court quoted with approval the following language from Fidelity & Casualty Co. of New York v. Federal Express:

> " 'It is also said that where one is the "active" tort-feasor, and the other, the "passive"—or where the primary or active fault rests upon one tort-feasor, he, as the active tort-feasor, is liable to the other. But this is only another way of expressing the same rule as otherwise above stated. *It does not mean that the joint tort-feasor whose negligence is the lesser can have indemnity from the other for damages caused by the concurring negligent act of both.*' " 82 Ariz. at 198–199, 310 P.2d at 821. (Emphasis added).

Subsequent Arizona decisions construing Busy Bee have not limited the principles stated therein to condition-of-the-premises cases, but they have been adamant that the one seeking indemnity *not be personally at fault in any way* if he is to recover. In Thornton v. Marsico, 5 Ariz.App. 299, 425 P.2d 869 (1967), Thornton, a highway patrolman who was involved in a collision with a truck, sought indemnity from a contracting company, which he alleged was actively negligent in its construction of a detour. Our Court of Appeals rejected this claim. For argumentative purposes the Court assumed both parties to be negligent. Then, after citing the oft-stated rule that contribution is not allowed among joint tort-feasors, the Court stated:

> "It is argued that Busy Bee Buffet v. Ferrell, supra, changed the general rule where one party is actively negli-

gent and the other party is only passively negligent. We do not believe this to be so. *What the Supreme Court of Arizona said was that when one was liable because of a duty imposed by law although he had not actively participated in the wrong which was the immediate cause of the injury,* then that one had a right to indemnity from the party who actively caused the injury. 7 Ariz.L.Rev. 59, 69. This is an expansion of the law of indemnity and not an abrogation of the law of noncontribution among joint tort-feasors. As the Supreme Court said in Busy Bee:

> 'The term "difference in kind and character" between the negligence of the Buffet and Pastis must not be confused with "comparative negligence" or "degrees of negligence" '.

*When Thornton drove the patrol car he acted. This act excludes him from the category of 'without personal fault'* and therefore the third party plaintiffs do not come within the purview of Busy Bee Buffet v. Ferrell." 5 Ariz.App. at 302, 425 P.2d at 872. (Emphasis added).

The furthest extension of the Busy Bee "primary-secondary" rationale is found in De Pinto v. Landoe, 411 F.2d 297 (9th Cir. 1969). That case involved the failure of De Pinto to resist a raid on a corporation's assets by resigning as director. The Ninth Circuit recognized that his resignation constituted a breach of fiduciary duty to the corporation under an implied or constructive trust. But it nevertheless allowed him to have indemnity against other defendants who were directors of the corporation at the time the assets were transferred. Applying Arizona law in accordance with its diversity jurisdiction, the court stated that De Pinto's wrongful conduct was "inactive in nature, different in character, and prior in time." 411 F.2d at 301. The court also said that notwithstanding statements to the contrary in Thornton v. Marsico, *supra*, "the essence of the Busy Bee Buffet rationale

remains undisturbed." 411 F.2d at 301. Finally the court concluded with this analysis of the comparative quality of the wrongful conduct for which De Pinto was held liable:

> "It is true that DePinto's liability to Provident was 'primary' in the limited sense that Provident could sue him in the first instance because of his breach of fiduciary duty. This was also true in Busy Bee Buffet. In both Busy Bee Buffet and Blakely [Blakely Oil, Inc. v. Crowder, 80 Ariz. 72, 292 P.2d 842] we think the Arizona Supreme Court made it clear that it used the 'primary'—'secondary' dichotomy as a means of differentiating one whose active wrongful conduct caused the damage from one whose wrongful conduct was not active, but rather consisted in a failure to fulfill a legal duty of preventing another from committing a wrong. DePinto is in the latter position." 411 F.2d at 301.

Whatever expansionary effect the De Pinto case may have had on the "active-passive", "primary-secondary" theories of Busy Bee, however, has been largely lost in subsequent decisions by our Court of Appeals. Pinal County v. Adams, 13 Ariz. App. 571, 479 P.2d 718 (1971), represents on its facts the closest thing to the application of a "but for" test to indemnity cases which we have to date. In that case Pinal County sought indemnity against a negligent driver who was traveling at a minimum of 72 mph in a 55 mph zone when he failed to execute a turn at a "T" intersection. Pinal County's negligence consisted merely in its failure to properly light the area and to post warning signs indicating the presence of an intersection.

The Court of Appeals framed Pinal County's claim for indemnity thusly:

> "Since its negligence consisted of the *failure* to do something, its negligence was passive rather than active. Therefore, it argues under the theory of *Busy Bee* that it is entitled to indemnity from Adams who was actively driving the au-

tomobile and whose active negligence caused the accident." 13 Ariz.App. at 573, 479 P.2d at 720. (Emphasis in original).

This contention was flatly rejected. Pinal County's contribution to the accident, and the resultant death of two passengers and serious injury to another, even though marginal and even though arising out of an omission instead of a positive act, was enough for the court to deny indemnity. Analyzing the problem in terms of the Busy Bee terminology, the court said:

"*The court in Busy Bee made it clear that it did not mean that a joint tort-feasor whose negligence is lesser can have indemnity from the other for damages caused by the concurring negligent act of both.* The Busy Bee case holds that when the indemnitee, *solely through the negligence of the indemnitor,* breaches his duty to maintain his premises in a reasonably safe condition for use by invitees, indemnity is available. Such is not the situation in the case sub judice.

"The facts in the case at hand show that the parties were guilty of concurrent negligence. The difference in the negligence between them is not so significant in kind or quality as to prompt us to shift the burden of the loss from the shoulders of the County and place it upon Adams." 13 Ariz.App. at 573–574, 479 P.2d at 720–721. (Emphasis added).

Another case having tangential relation to the questions at hand is Chrysler Corp. v. McCarthy, 14 Ariz.App. 536, 484 P.2d 1065 (1971). There plaintiff was injured when he was struck head-on by a police officer who was traveling in the wrong lane. Plaintiff sued only the officer and his employer, the City of Phoenix. The defendants then brought a third party complaint for indemnity against the Chrysler Corporation on the theory that the accident was caused by a malfunction or a locking of the brakes on their vehicle. The plaintiff had alleged that defendants knew of this condition, however, and the Court of Appeals on special action review held that the third party complaint should have been dismissed. The Court reasoned that under the allegations of the complaint Chrysler could not be held liable unless the jury found the City and its employee at fault (negligent). Thus, the Court concluded that indemnity could not be had.

With reference to Busy Bee the court said:

"*Busy Bee Buffet* permits a right of indemnity against the *active* tort-feasor by one whose liability is based upon merely "passive" negligence *and* a legal relationship which makes him responsible for the other's active negligence. As indicated in Thornton v. Marsico, 5 Ariz. App. 299, 425 P.2d 869 (1967), *Busy Bee Buffet* does not permit a right of indemnity where the liability of the original defendant and would-be indemnitee is based upon his own active negligence or *active participation in the liability-creating event.*" 14 Ariz.App. at 538, 484 P.2d at 1067. (Emphasis added). (Footnote omitted).

The most recent case construing Busy Bee is Employers Mutual Liability Insurance Co. of Wis. v. Advance Transformer Co., 15 Ariz.App. 1, 485 P.2d 591 (1971). In that case the Foley Co. installed a fixture in a hospital without properly grounding it in accordance with city ordinances. An employee of the hospital was killed by electrocution when he touched an energized support of the fixture. The employee's widow brought a suit for wrongful death against Foley, whose insurer settled the claim for $190,000.

Then Foley's insurer filed a third party complaint against the manufacturers and assemblers of the fixture, seeking indemnity. Summary judgment in favor of the latter was granted at trial. On appeal the Court of Appeals reviewed the stipulations, which, in relevant part, admitted Foley's negligence and admitted "that such negligence was the proximate cause of Mr. Morgan's death". 15 Ariz.App. at 2, 485

P.2d at 593. From this the Court concluded:

"Thus we see the record reflects that appellant's insured was admittedly negligent in failing to ground the subject fixture. Assuming arguendo that appellees' products were defective in design, manufacture, or assembly, it is well settled in this jurisdiction that there can be no contribution or indemnity between joint tortfeasors. Pinal County v. Adams, 13 Ariz.App. 571, 479 P.2d 718 (1971) and cases cited therein. It is equally well settled that when one is liable because of a duty imposed by law although he had *not actively participated* in the wrong which was the immediate cause of the injury, then he has a right to indemnity from the party who actively caused the injury. Busy Bee Buffet, Inc. v. Ferrell, 82 Ariz. 192, 310 P.2d 817 (1957); Thornton v. Marsico, 5 Ariz.App. 299, 425 P.2d 869 (1967); 7 Ariz.Law Review 59, 69 (1965). (Emphasis in original).

\* \* \* \* \* \*

"When Foley, acting through its employee, installed the subject fixture, it acted. Having actively participated in the wrong which caused Morgan's death, Foley was not 'without personal fault' and therefore not within the purview of Busy Bee Buffet v. Ferrell, supra. There being no factual issue as to Foley's active participation in the wrong which caused Morgan's death, the trial court properly ruled, as a matter of law, that there was no right of indemnity." 15 Ariz.App. at 3, 485 P.2d at 593. (Footnote omitted).

The case before us, of course, differs from Employers Mutual Liability Insurance Co., *supra*, in that appellants here did not stipulate to having proximately caused the death of Mrs. Bates. They were nevertheless properly held liable for that death under the Restatement of Torts and other authorities. We are therefore presented with two questions. First, was the liability of the appellants equivalent to the technical liability of the Buffet in Busy Bee? Second, under Busy Bee and the cases subsequently decided, are appellants entitled to indemnity?

■ We are of the opinion that the finding that appellants were liable for any damages flowing from Mrs. Bates' death was not merely a finding of "technical" liability. It differs significantly from the Buffet's liability—a liability founded on the breach of a non-delegable duty with respect to the condition of the premises. Without the active misconduct of another, there would have been no injury whatsoever in Busy Bee—the entire injury and damages were occasioned solely by the misconduct of another. Here the liability of Transcon stemmed, first from its admitted performance of a negligent act resulting in serious injuries to Mrs. Bates, and then from these injuries combining with negligent medical care and treatment to produce the final injurious consequence, a foreseeable risk, flowing from Transcon's original negligence.

As the trial judge indicated to counsel for appellants at trial, they participated in the liability-creating event in forcing decedent to seek medical care. In response to counsel's argument that the "proximate cause" of death was a jury question, the court stated:

"*But the injury put her in the hospital.* If their negligence produced the bronchopneumonia, this is directly within the restatement rule." (Emphasis added).

Although the question is not presented to us on appeal, we feel that the fact that the injury put Mrs. Bates in the hospital was clear enough. That was a proper "but-for" determination by the court, and it did not need to be sent to the jury. The question we must resolve is whether under the authorities there was sufficient participation in the liability-creating event by appellants by virtue of this "but-for" relationship to bar them from receiving indemnity.

█ We think there was. The relative degree of delict as between appellants and appellee is irrelevant. It must be remembered that indemnity is an all or nothing proposition damage-wise, and hence should be an all or nothing proposition fault-wise. Apportionment of damages is not contemplated by it. That is the function of contribution. Similarly the balancing of respective degrees of fault is not a part of the doctrine of indemnity. This is what our cases mean when they state that there can be no indemnity between joint tortfeasors. Stated in the positive the cases mean simply that indemnity between tortfeasors is allowable only where the whole of the fault was in the one against whom indemnity is sought. *Cf.* Leflar, *supra*, 81 U.Pa.L.Rev. at 146–159.

Here appellants did not participate in the care and treatment of Mrs. Bates, but they were responsible for the event which caused her to be hospitalized. Moreover their negligence did not arise out of a mere breach of an affirmative duty to act. They acted, and they did so negligently when they drove their truck into Mrs. Bates' automobile. In short, they were not without personal fault; thus they are not entitled to indemnity.

█ We have carefully reviewed the case of Herrero v. Atkinson, 227 Cal.App.2d 69, 38 Cal.Rptr. 490 (1964) presented to us by appellants, and we reject the reasoning contained therein. In that case Herrero, while driving a motor vehicle, was involved in an accident with another vehicle. Alice Lorenzo was injured in that accident. She filed suit against Herrero for personal injuries. About 18 months after the accident, she employed three doctors to perform an operation made necessary because of her injuries by Herrero. In the course of the operation, and allegedly as the result of a negligent blood transfusion, she died.

The decedent's personal injury claim remained in full force in accordance with a California survivorship statute. The administrator of her estate, however, also filed an action for wrongful death, naming the doctors, the hospital, and Herrero. Herrero filed a cross-complaint for declaratory relief and indemnity against hospital and doctors.

The California district court of appeals granted the relief requested by Herrero. The court noted that Herrero's liability for the negligence arose solely "out of a positive rule of decisional law of this state."[3] The court then granted indemnity to Herrero (as to the wrongful death suit), expressing the following rationale:

"Although the original negligence of Herrero may be regarded in law as a proximate cause of the damages flowing from the subsequent malpractice of the cross-defendants, and the plaintiff may recover a joint and several judgment against all who are found liable, there is no reason why the ultimate burden of damages should not be distributed among the various defendants, and each be made to bear that portion of the judgment which in equity and good conscience should be borne by him. Here, Herrero has had no part in the selection of any of the cross-defendant doctors or hospital. Nothing appears to indicate that he was even aware of the decedent's decision to submit to surgery. He has had no control or direction over the conduct of the cross-defendants and not the slightest opportunity to protect himself against their negligence, yet he is made liable in law for any damages caused by them. *Under such circumstances it is equitable and just that indemnity be allowed Herrero*, and that the cross-defendant doctors and hospital bear that portion of the damages

3. The case from which this "positive rule of decisional law" stemmed was Ash v. Mortensen, 24 Cal.2d 654, 150 P.2d 876 (1944). This case expresses a rule of liability which closely resembles § 457, Restatement of Torts 2d.

caused by their own negligent conduct." 227 Cal.App.2d at 75, 38 Cal.Rptr. at 493. (Emphasis added).

Our difference of opinion with the California court rests in the fact that we do not believe that an appellate court's notion of what is "equitable and just" should interfere with its determination of whether one tortfeasor should recover indemnity against another. The key to that determination is simply whether the one seeking indemnity was in any way at fault. Perhaps, one of the "circumstances" which influenced the California court was the fact that Herrero, by virtue of the survivorship statute, probably would be held liable for personal injury damages. We do not have that circumstance before us, and even if we did, we would not consider it with reference to a right to indemnity.

The California court's approach to indemnity questions is an uncertain one at best, as evidenced by the following statements made before finding that Herrero was entitled to indemnity:

"The duty to indemnify may arise, and indemnity may be allowed in those fact situations where in equity and good conscience the burden of the judgment should be shifted from the shoulders of the person seeking indemnity to the one from whom indemnity is sought. The right depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him. Thus the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case." 227 Cal.App.2d at 74, 38 Cal.Rptr. at 493.

The Restatement of Restitution is much clearer. Section 96 reads as follows:

"A person who, *without personal fault,* has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability. (Emphasis added).

Appellants claim, however, that this section of the Restatement of Restitution, also affords them the right to indemnity in this case. We disagree. Appellants argue that they fall under the following portion of Comment *a* to this section, which reads:

"The rule applies likewise to other situations in which, by statute or otherwise, a person without fault is responsible for the conduct of another."

Reading further in the Comment, however, we discover that all of the illustrations given are cases where liability was merely imputed without any positive act or omission on the part of the person seeking indemnity. The Comment proceeds as follows:

"Illustrations of this are found under modern decisions and statutes which impose liability upon a person who has permitted another to drive an automobile, as where the head of a household is made liable for the negligent driving of the members of the family, the licensed driver is made liable for the negligence of an unlicensed driver driving in his presence, or the owner of a car is made the insurer of the conduct of one to whom he lends the car."

Not only is the imputed liability theory expressed in this Comment inapplicable to appellants, but, as we have indicated previously, we are of the opinion that appellants were not without personal fault in bringing about the liability-incurring event.

■ Another section of the Restatement of Restitution is helpful here. It is Section 102, and it reads as follows:

"Where two persons acting *independently or jointly,* have negligently injured a third person or his property for which injury both became liable in tort to the third person, one of them who has made expenditures in the discharge of their liability is not entitled to contribution from the other." (Emphasis added).

The key word in this section is "independently". Thus, as Comment *a* to this section indicates, tortfeasors whose negligence is not joint or concurrent, but is merely independent, are not entitled to contribution (or indemnity) from each other if their "negligence has contributed to an injury to a third person". Such is the case here. Appellants' negligent driving and negligent infliction of injuries on decedent placed her in the hospital. And appellee's negligent care, treatment, and negligent medical judgment placed her on the airplane where she lost her life. The two acts were related, and both actors "contributed" to her death.

The only relevant exception to § 102, as indicated in Comment *c*, is where the second actor "has been guilty of supervening intentionally harmful or reckless conduct". While appellee's wrongful conduct may have been "supervening" in the sense that it followed appellants' wrongful conduct, we cannot say that it was reckless or intentional. As a matter of fact, neither plaintiff's complaint, nor appellant's cross-claim, alleged reckless, gross, or intentional negligence on the part of appellee.

We conclude with a recognition that this might have been a more proper case for contribution than indemnity. Appellants did not seek contribution, however, apparently recognizing that Arizona adheres to the rule denying contribution among joint tortfeasors. This is a harsh doctrine, and its harshness has been explained by Justice Learned Hand as giving rise to "lenient exceptions" in the form of rules of indemnity. *See* Slattery v. Marra Bros., Inc., 186 F.2d 134, 138 (2d Cir.), cert. denied, 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1351 (1951). There are solutions to this problem, but they are not for us to fashion. Our legislature could follow the course of at least eight other states and adopt the Uniform Contribution Among Joint-tortfeasors Act. *See* Sherk, *supra*, 7 Ariz.L.Rev. at 60, n. 6. Or our supreme court could follow the path of at least nine other jurisdictions and allow contribution by judicial decision.

*See* W. Prosser, The Law of Torts, 274–275 & nn. 46–54 (3d Ed. 1964). Until either of these events occurs, however, we do not deem it appropriate to create "lenient exceptions" in favor of tortfeasors whose negligence contributes to the injury of another. That is not the purpose of indemnity; its purpose is simply to give full restitution to one who pays damages but is without personal fault.

The judgment is affirmed.

EUBANK and JACOBSON, JJ., concur.