457 P.2d 729

**CITY OF PHOENIX, a municipal corporation, Appellant,**

v.

**Elmer S. WHITING, David K. Whiting and Stephen K. Whiting; Salt River Project Agricultural Improvement and Power District, an agricultural improvement and power district under the laws of the State of Arizona, Appellees.**

No. 1 CA–CIV 645.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 7, 1969.

Rehearing Denied Sept. 17, 1969.

Review denied Oct. 14, 1969.

Robert J. Backstein, City Atty., by Edward P. Reeder, Asst. City Atty., for appellant.

Charles M. Brewer, John J. Dickinson, Herbert Mallamo, Phoenix, for Elmer S., David K. and Stephen K. Whiting.

Jennings, Strouss, Salmon & Trask, by Rex H. Moore, William R. Jones, Jr., Phoenix, for Salt River Project Agricultural Imp. & Power Dist.

STEVENS, Judge.

After a jury trial and verdict, a judgment was entered in favor of the appellees in the sum of $100,000. The claim arose out of the death of Delores Whiting on 14 August, 1963. At the time of her death she was approximately 29 years of age, her husband Elmer S. Whiting was approximately 33 years of age and the children Stephen and David were 8 and 2 years of age respectively. At the time of Mrs. Whiting's death, the Whitings had been married for approximately 13 years. The verdict and resulting judgment were in single sum without allocation as to the damages sustained by any of the three individuals who were the plaintiffs. No effort was made to secure a separate verdict for each of the plaintiffs. In this connection see Salinas v. Kahn, 2 Ariz. App. 181, 407 P.2d 120 (1965) which was modified in other particulars by a supplemental opinion reported in 2 Ariz.App. 348, 409 P.2d 64 (1966) and Lueck v. Superior Court, 10 Ariz.App. 161, 457 P.2d 348, (decided July 17, 1969).

The claim arose out of the fall of a tree which struck the motor vehicle Mrs. Whiting was driving. Mrs. Whiting was driving westerly on Southern Avenue. To her right and adjacent to the highway was an irrigation ditch which was roughly parallel to Southern Avenue. Further to her right on the north bank of the ditch, there was a row of cottonwood trees. In the dust which temporarily obscured the view of two other persons driving on the same highway one of the trees on the north bank of the ditch fell across the highway crushing the Whiting automobile and causing the death of Mrs. Whiting.

Southern Avenue was contained within an area which was annexed by the City of Phoenix in the year 1960. The tree was within the area of an easement which the City of Phoenix had acquired for roadway purposes from the Salt River Project Agricultural Improvement and Power District (the Project), the easement bearing the date of 18 February, 1963.

The complaint alleged the duty of the City to keep its streets safe, to make proper and reasonable inspections and examinations of trees, and to remove dead and decayed trees which were likely to fall. It was alleged that the tree in question was dead, rotten and decayed.

The City filed a motion for leave to file a third-party claim against the Project, urging Rule 14(a) of the Rules of Civil Procedure, 16 A.R.S. All Rules referred to in this opinion are Rules of Civil Procedure. Notice was given to the plaintiffs but not to the Project. The motion was granted by Judge Stanford on 8 October, 1965 and on 22 October, 1965, the third-party complaint was filed and served. The third-party complaint sought recovery over against the Project in the event of a judgment in favor of the plaintiffs and against the City. The third-party complaint alleged the filing of the action, attached a copy of the complaint, alleged that the tree was on land owned and controlled by the Project, that the Project was careless and negligent in its maintenance of the irri-

gation ditch causing the roots and center heartwood of the tree to rot and causing the softening of the earth where the tree stood. The City urged that the Project was guilty of active and primary negligence and that at most the City could be charged with no more than passive or secondary negligence.

The Project filed its answer urging among other matters in the answer that the third-party complaint did not state a claim for relief. Five months after the Project filed its answer it filed a motion to dismiss urging the failure of the third-party complaint to state a claim for relief, the Project citing Rule 12. Judge McCarthy entered a judgment of dismissal and the City urges error. The City urges that the motion to dismiss was not timely filed and was therefore waived; that Judge Stanford's order granting the motion for leave to file the third-party complaint was conclusive on the Project; and, if the foregoing procedural objections are not well taken, that Judge McCarthy erred as a matter of law in dismissing the third-party complaint.

## TIMELINESS OF THE MOTION

At the time of Judge McCarthy's ruling Rule 12(b) provided in part:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a * * * third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

* * * * * *

6. Failure to state a claim upon which relief can be granted.

* * * * * *

A motion making any of these defenses shall be made before pleading if a further pleading is permitted. * * *."

The defense listed in subparagraph 6 was raised in the answer to the third-party complaint and later by a specific motion. At the time of Judge McCarthy's ruling, Rule 12(i) stated in part:

"A party waives all defenses and objections which he does not present either by motion as provided in this Rule, or, if he has made no motion, in his answer or reply, except:

1. That the defense of failure to state a claim upon which relief can be granted, * * * may also be made * * * at the trial on the merits * * *."

This portion of Rule 12 was amended effective 31 October, 1966, after the entry of the judgment dismissing the third-party complaint. The amended Rule contains the same basic provisions above quoted and, in our opinion, if there was any ambiguity in the Rule prior to the amendment, the amendment clarified the meaning to be in accordance with the above partial quotation of the Rule.

It is urged that Olsen v. Macy, 86 Ariz. 72, 340 P.2d 985 (1959) holds that a motion to dismiss filed under the circumstances before the Court in the case now under review was waived. In our opinion, Olsen does not so hold but does hold that if a party is to raise the issue of the failure to state a claim for relief by motion, then a Rule 12(b) motion is the appropriate motion. In Zuniga v. City of Tucson, 5 Ariz. App. 220, 425 P.2d 122 (1967) this Court quotes Jacob v. Cherry, 65 Ariz. 307, 180 P.2d 217 (1947) to the effect that if the complaint "does not state a cause of action and should have been dismissed by the trial court, if necessary (the trial court could have entered such an order) on its own motion."

█ We hold that the Rule 12(b) (6) motion was timely and was not waived. We express no opinion as to whether the position urged by the City might be sound as to other subsections of Rule 12(b).

## WAS THE ORDER PERMITTING THE FILING CONCLUSIVE?

█ Even though we hold that the Rule 12(b) motion was not waived it is urged that Judge Stanford's order permitting the filing of a third-party complaint is binding

upon the Project. The Project was not given notice of the filing and had no opportunity to resist the motion, nor do the Rules so require. A defendant's privilege of engaging in third-party practice is governed by Rule 14(a), amended effective 1 June, 1963, a date prior to Judge Stanford's order. Under some circumstances, not applicable here, a defendant can file a third-party complaint without first securing a court order. In either event, that is, the filing of a third-party complaint with or without first securing a court order, the Rule specifies that:

> "[t]he person served * * * shall make his defenses to the third-party plaintiff's claim as provided in Rule 12 * * *."

We hold that the Rule is express and that the order entered by Judge Stanford permitting the filing of the third-party complaint was not conclusive upon the Project.

## DOES THE THIRD-PARTY COMPLAINT STATE A CLAIM FOR RELIEF?

█ A Rule 12(b) motion to dismiss admits facts well pleaded. Lakin Cattle Company v. Engelthaler, 101 Ariz. 282, 419 P.2d 66 (1966); Thornton v. Marsico, 5 Ariz.App. 299, 425 P.2d 869 (1967), review denied; and Kalmanoff v. Weitz, 8 Ariz.App. 171, 444 P.2d 728 (1968), review denied. A motion to dismiss a third-party complaint was one of the issues presented in *Thornton*. We are not here concerned with whether the plaintiffs could have joined the Project as a party-defendant in the first instance. *Thornton* discussed Blakely Oil v. Crowder, 80 Ariz. 72, 292 P.2d 842 (1956) and Busy Bee Buffet v. Ferrell, 82 Ariz. 192, 310 P.2d 817 (1957). In the original complaint now before the Court of Appeals, active fault on the part of the City of Phoenix was alleged even though that fault be a failure to act. At most, the City and the Project were joint-tort feasors, between whom there is no contribution, and between whom there would at most have been a matter of common liability. See the *Blakely Oil* case. While it is true that the City alleged that the Project was the one actively and primarily negligent and that the City was only passively or secondarily negligent, these assertions are the conclusions of the pleader. The third-party complaint filed by the City does not set forth facts which support these conclusions in the face of the facts alleged in the complaint. See also Truck Equipment Company of Arizona v. Vanlandingham, 103 Ariz. 402, 442 P.2d 849 (1968). We hold that Judge McCarthy's ruling sustaining the motion to dismiss the third-party complaint and his entry of a judgment of dismissal were not error.

## THE CASE AS TRIED

We come then to the merits of the litigation between the plaintiffs and the City of Phoenix. This was a hard-fought case and hard-fought cases often present problems to the trial judge and to the appellate court. The various papers filed created a file two and a half inches thick. The trial lasted for several days and the reporter's transcript occupies over 800 pages. There were over 70 exhibits. The discovery procedures were extensive.

After the Whitings were married, Mrs. Whiting continued her high school education and then she secured her training as a practical nurse. With time out for the births of the two children she continued to work for the benefit of the family. The Whitings had visited Arizona and liked Arizona. They decided to move to Arizona. Mrs. Whiting and the children came to Arizona while Mr. Whiting retained his employment. After Mrs. Whiting secured employment, Mr. Whiting was in the process of selling their home and taking the steps necessary to move to Arizona when the tragedy occurred. The City urged the defenses of contributory negligence and assumption of risk. The trial judge refused to instruct on these defenses and our view of the record leads us to affirm his decision in this respect.

## HUSBAND'S REMARRIAGE

Mr. Whiting remarried in December, 1964. The trial took place in January, 1967. Pursuant to a motion filed before the trial by plaintiffs' counsel, Judge McFate ruled on 25 October, 1968, granting the plaintiffs' motion to preclude any reference by the City to the fact:

"That one of the plaintiffs, to-wit:
Elmer S. Whiting has remarried."

The trial judge honored and followed this ruling. The City urges that Judge McFate's ruling and the trial judge's adherence thereto constitute error.

Our Supreme Court has not expressly passed on this subject. Our Supreme Court refrained from a statement of its opinion on this subject in the case of State v. Stone, 104 Ariz. 339, 452 P.2d 513 (1969) and its supplemental opinion, 452 P.2d 513, filed 14 May, 1969.

The great majority of the states hold that the limitation placed upon the City of Phoenix in connection with the trial of the case now under consideration was the correct ruling. See McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183, 87 A.L.R.2d 246 and the A.L.R. annotation following the case report. So far as we are informed, Wisconsin [See the 1964 decision of Jensen v. Heritage Mutual Insurance Company, 23 Wis.2d 344, 127 N.W.2d 228] and Mississippi [See the 1967 decision of Campbell v. Schmidt, 195 So.2d 87] are the only states holding against the majority. Arizona's statutory measure of damages in a wrongful death action is found in A.R.S. § 12–613. In part, this section provides:

"In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default."

One member of the Department participating in this opinion urges the Wisconsin and the Mississippi rule, but the majority of those participating in this opinion urge the majority rule. We hold that there was no error in refusing to permit the disclosure of Mr. Whiting's remarriage.

Mr. Klotz, one of the witnesses for the plaintiffs testified on direct examination as to his observations of Mr. Whiting. He stated of Mr. Whiting:

" * * * Seems like he's out in the field by himself. He is lost."

The same witness in comparing Mr. Whiting as a youth stated:

"The boy was a lot different than he is today."

No immediate steps were taken by the City to seek leave to inquire as to this witness's knowledge of the fact of the remarriage of Mr. Whiting. This action was taken by the City at a later point in the trial. We hold that this brief testimony did not run contra to Judge McFate's October ruling and did not open the door to evidence as to the fact of remarriage.

While it is conceivable that evidence offered by a surviving spouse could open the door to the fact of remarriage, the record before us reflects considered care in avoiding the issue. We affirm the ruling precluding the presentation of the fact of remarriage to the jury.

## WHAT CAUSED THE TREE TO FALL?

The complaint alleged that the tree in question was dead and was rotten. The complaint charged the City with actual knowledge or with notice of the dangerous condition of the tree. An answer to one of the interrogatories which the plaintiffs directed to the City stated:

"There was only one large root supporting the tree about 24 to 30 inches in diameter and growing away from the irrigation ditch toward a cultivated field. The remaining root system, coming from

90% of the trunk area, was dead and rotten, except for two roots of about 2 to 3 inches in diameter. In other words, the tree had very little support along the soft ditch side facing the road. From the outward appearance of the trunk area, it would have been impossible to have known that the majority of the root system had rotted as the trunk was solid and alive at a distance of 2 to 3 feet from the base. The tree appeared in a healthy condition with full, green foliage."

A reading of the record indicates that there is no question but that the tree fell by reason of the inadequacy of the roots to maintain the tree in a standing position and the real issue involved was the matter of knowledge by or notice to the City of Phoenix.

There was evidence that one of the responsible City employees told a newspaper reporter very shortly after the accident:

"He said the trees were old, very old and weak."

When this same employee was on the witness stand, we find the following question and answer:

"Q. Well, how did you come to know that they're very weak and very old, please, sir?

A. These are among many others along Southern Avenue which we have had some past experience with the limbs falling down, and, of course, even the examination of the photographs reveal that due to their size they are old."

It was stipulated that the tree in question was within the easement for the roadway right-of-way which was given to the City in February, 1963. There was evidence that the line of trees on the north edge of the ditch leaned toward the highway across the ditch. The evidence presented at the trial fairly clearly establishes that the tree in question was not "dead" in that it bore foliage at the time of the accident and that in the cutting of the tree to free the highway two chain saws were burned up "due to the greenness and the moisture of the tree".

There was evidence of at least one "conk" on the tree in question and that there were conks on neighboring trees which indicated rot within the trees. There was evidence of falling branches especially during summer winds, branches which were removed by crews of the City. The tree in question fell as a unit, the roots to the north gave way. It did not break and fall. There was evidence from a lay witness familiar with cottonwood trees that he considered the trees along Southern Avenue to be dangerous on windy days.

 All in all it is our opinion that the issue of notice of the dangerous condition of these trees including the tree in question or knowledge of this dangerous condition was supported by sufficient evidence to merit the submission of the issue to the jury. In our opinion the instructions in relation thereto were adequate. We are of the opinion that the allegations and evidence as to the rotten condition of the tree were broad enough to frame the issues for trial and that the proof showed that the tree fell due to decay of the root structure and to the absence of sufficient supporting root structure. We are of the opinion that there was no error in the receipt of evidence relative to the condition of adjoining trees there being sufficient foundation as to similarity of appearance and this being of value in the area of knowledge or notice.

## NUISANCE

 Over the objection of the City, the trial court instructed the jury on the subject of nuisance. In part the instruction is as follows:

"If you find that the defendant City of Phoenix controlled the land on which the tree which killed Mrs. Whiting was located and that the defendant City of Phoenix had notice, actual or constructive, that the tree was decayed and dangerous and likely to fall, then you may find that the defendant City of Phoenix was guilty of maintaining a nuisance and you should not debate that question further, but should then consider the issue whether

that nuisance was a proximate cause of the injury."

In our opinion the above-quoted portion of the instruction is within the import of the case of City of Phoenix v. Johnson, 51 Ariz. 115, 75 P.2d 30 (1938). The court in its instructions also quoted A.R.S. § 13–601. In view of the recent case of Rodgers v. Ray, 10 Ariz.App. 119, 457 P.2d 281 (decided July 3, 1969), we question the appropriateness of this section as to the facts in this case. On the other hand, we do not find that the quotation of the statute was of that degree of significance in considering the overall of the instructions as to be reversible error.

### PASSION AND PREJUDICE AND MISCONDUCT OF COUNSEL

The City urges error in the court's instructions to the jury that if the jury found for the plaintiffs its verdict should award damages "for all detriment suffered". These words are a small portion of a long and comprehensive instruction on the subject of damages and the various elements which may be considered by the jury in reaching its determination as to the measure of damages. When considering the overall instruction on the subject of damages, it is our opinion that the jury could not be misled by the above-quoted language. A.R.S. § 12–613, heretofore quoted, indicates a very broad base for the measure of damages in a wrongful death action. The trial court apparently believed that the damages awarded were not excessive and we concur.

It is urged that plaintiffs' counsel overstepped the bounds of reason in his argument. The City objected to one particular phase of the argument and the objection was sustained by the court. The court declined to grant a mistrial and declined to grant a new trial. We believe, considering the language of the instructions and the ruling of the court, that no reversible error was committed.

From our overall examination of this record we conclude that the judgment should be and it is affirmed.

DONOFRIO, P. J., and CAMERON, J., concur.