559 P.2d 1067

The MOUNTAIN STATES TELEPHONE
AND TELEGRAPH COMPANY,
Appellant,

v.

CORBIN–DYKES ELECTRIC
CO., Appellee.

No. 1 CA–CIV 2915.

Court of Appeals of Arizona,
Division 1.

Oct. 14, 1976.

Rehearing Denied Nov. 23, 1976.

Review Denied Dec. 21, 1976.

Fennemore, Craig, von Ammon & Udall by Ruth V. McGregor, Roger C. Mitten, Phoenix, for appellant.

Burch, Cracchiolo, Levie, Guyer & Weyl by Daniel Cracchiolo, Brian Kaven, Phoenix, for appellee.

JACOBSON, Judge.

May a landowner who has created a condition on his land so as to be dangerous to third persons off the land, obtain indemnity from a contractor employed to correct that dangerous condition when the condition subsequently causes injury? This is the basic issue presented by this appeal.

Appellant, The Mountain States Telephone and Telegraph Company (Mountain States) and others have been sued as a result of deaths occurring in a collision between a pickup truck and a Southern Pacific Railway locomotive. The accident occurred at the intersection of Price Road and the Southern Pacific Railroad tracks in Tempe, Arizona. Mountain States' liability in that action is premised on the allegation that security lighting at its maintenance yard located at the northeast corner of Price Road and the railroad tracks shone on that intersection creating a hazardous and dangerous condition and that Mountain

States negligently failed to eliminate the dangerous nature of the security lighting.

Approximately 8 months prior to the accident, Mountain States had employed appellee, Corbin-Dykes Electric Company (Corbin-Dykes) to "adjust yard floodlights not to shine on railroad tracks on Price Road."

Upon being sued as the result of the pickup-locomotive collision, Mountain States filed a third party complaint against Corbin-Dykes, seeking indemnity for any damages it might incur as the result of the litigation against it on the theory that Corbin-Dykes, negligently failed to correct that condition. Following discovery, Corbin-Dykes moved for summary judgment on the third party complaint contending, in essence, that at most the evidence showed that Mountain States and Corbin-Dykes were joint tortfeasors and since, under Arizona law, no right of contribution or indemnity exists between joint tort-feasors, the third party complaint must fail. The trial court granted Corbin-Dykes' motion for summary judgment and Mountain States has appealed.

Mountain States has characterized its relationship to the liability creating event vis-a-vis Corbin-Dykes in the classic terms of "active and passive negligence" utilized in *Busy Bee Buffet v. Ferrell,* 82 Ariz. 192, 310 P.2d 817 (1957). Mountain States' argument is that if in fact it owed a duty to the driver of the pickup, this was a duty imposed on it as a matter of law—a duty of a landowner not to create a dangerous condition on his premises and if in fact it breached this duty, the breach was due solely to Corbin-Dykes' negligence in improperly performing its contractual obligation to adjust the floodlights. Mountain States then categorizes its negligence as "passive" (liability imposed as a matter of law) and Corbin-Dykes' negligence as "active" (failing to correct the hazardous condition) which entitled it to indemnity under the *Busy Bee* doctrine.

Corbin-Dykes countered this argument by pointing out that one of the allegations of negligence made against Mountain States was its negligent failure to "eliminate the dangerous nature of the security lighting"; that assuming Corbin-Dykes negligently failed to correct this situation, this condition continued to exist for a period of 8 months following Corbin-Dykes' adjustment; and that Mountain States' failure to correct this lighting situation during the 8 months period constitutes "active" negligence, denying Mountain States the right to indemnity.

The court in *Busy Bee* found that the Buffet owed the injured plaintiff, Ferrell, the legal duty to maintain the passageway in a reasonably safe condition and in failing to do so, was liable to Ferrell for his damages. However, it permitted the Buffet to recover against the co-tenant Pastis on the basis of indemnity because it found that under the circumstances the negligence of the Buffet was incapable of producing injury to anyone at the time except through the active negligence of Pastis in leaving the trap door open. Thus, both the Buffet and Pastis were negligent, but because the injuries to Ferrell depended upon the "active" negligence of Pastis, the negligence of the Buffet, being thus "passive", did not bar indemnity. Thus the rule preventing contribution and indemnity between joint tort-feasors did not arise under the facts of that case.

In our opinion, the Court of Appeals in *Pinal County v. Adams,* 13 Ariz. App. 571, 479 P.2d 718 (1971), correctly analyzed the holding in *Busy Bee* :

"The court in *Busy Bee* made it clear that it did not mean that a joint tort-feasor whose negligence is lesser can have indemnity from the other for damages caused by the *concurring* negligent act of both. [Emphasis added] The *Busy Bee* case holds that when the indemnitee, *solely* through the negligence of the indemnitor, breaches his duty to maintain his premises in a reasonably safe condition for use by invitees, indemnity is available." [Emphasis in original]. 13 Ariz.App. at 573, 479 P.2d at 720.

In choosing to draw a distinction between "passive" and "active" negligence, the court in *Busy Bee* was referring to more than

just the amount or quantum of negligence. In a sense the court found the negligence of Pastis to have been an intervening cause which, while not relieving the Buffet of liability, was sufficient to justify shifting the loss completely from the Buffet to Pastis on principles of indemnity.

■ That the party seeking indemnity must be free from any negligence (regardless of the nature of that negligence) contributing to the liability creating event has been repeatedly stressed in the reported opinions subsequent to *Busy Bee. See, Desert Steel Co. v. Superior Court,* 22 Ariz.App. 279, 526 P.2d 1077 (1974); *Allison Steel Mfg. Co. v. Superior Court,* 20 Ariz.App. 185, 511 P.2d 198 (1973); *Transcon Lines v. Barnes,* 17 Ariz.App. 428, 498 P.2d 502 (1972); *Employers' Mutual Liability Ins. Co. of Wisconsin v. Advanced Transformer Co.,* 15 Ariz.App. 1, 485 P.2d 591 (1971); *Chrysler Corp. v. McCarthy,* 14 Ariz.App. 536, 484 P.2d 1065 (1971); *City of Phoenix v. Whiting,* 10 Ariz.App. 189, 457 P.2d 729 (1969); *Thornton v. Marsico,* 5 Ariz.App. 299, 425 P.2d 869 (1967). *See also,* Sherk, *Common Law Indemnity Among Joint Tortfeasors,* 7 Ariz.L.Rev. 59 (1965).

With this analysis in mind, we turn to Mountain States' contention that it is entitled to indemnity from Corbin-Dykes for its alleged negligence in failing to properly adjust the security lighting so as not to shine on the Southern Pacific tracks. In doing so, we must in turn determine the basis of the *liability* claim asserted against Mountain States by the original plaintiff in this action.

The original plaintiff alleges, insofar as Mountain States is concerned, that its maintenance yard "was in a dangerous condition which created a substantial risk of injury in that [Mountain States] erected, or caused to be erected, security lights in said maintenance yard, the brillance [sic] of which was so intense" that motorists were not able to adequately guard against the danger of approaching trains. The original plaintiff also alleged that "the direct and proximate result of the negligent failure of [Mountain States] to eliminate the dangerous nature of the security lighting at their maintenance yard" caused certain persons to be killed.

Prosser on Torts states the duty involved here as:

"The possessor is under the obligation to make only a reasonable use of his property, which causes no unreasonable harm to others in the vicinity." W. L. Prosser, Handbook of the Law of Torts, § 57, at 351 (4th ed. 1971)

The liability for the breach of this duty may be based upon intent, upon negligence, or by condition or activity for which strict liability may be imposed. Prosser, *supra.* The original plaintiff's complaint, in our opinion, casts the breach of Mountain States' duty in terms of simple negligence, that is, the "negligent" erection of the security lighting, so as to create a dangerous condition, and the "negligent" failure to eliminate that dangerous condition. Thus, Mountain States' liability is not based on a theory that it is without fault which contributed to the accident, rather it is based upon Mountain States' negligence in the first instance—the negligent creation of the dangerous condition and the negligent failure to eliminate it.

However, we can legitimately conclude from Mountain States' pleadings that it became aware of the dangerous condition it had allegedly negligently created and hired Corbin-Dykes to correct it. Do these added elements of awareness and undertaking to correct change Mountain States' liability to the original plaintiff from that of one with fault to one without fault for which it would still be liable so as to entitle it to indemnity? In our opinion it does not.

It is important at this juncture to point out that we are not concerned in this appeal with what liability, if any, Corbin-Dykes may have to the original plaintiff.

We are concerned only with the nature of Mountain States' liability and the effect of Corbin-Dykes' acts on that liability. Either Mountain States negligently erected and maintained the lights or it did not. Either Mountain States failed to eliminate the dangerous condition caused by the lighting

or it did not. Its liability, in any event, rests solely on its duty to use reasonable care so as not to create a condition on its premises which will injure persons off the premises. The only manner, under the pleadings here, in which Mountain States would have breached that duty was by its own negligence. While Corbin-Dykes may have failed to adjust the lights correctly, its negligence, if any, would, at best, be concurrent with that of Mountain States. As previously pointed out, concurrent negligence does not give rise to a right in indemnity. *Pinal County v. Adams, supra.*

It very well may be that Mountain States can convince a trier of fact that it became aware of the dangerous condition and reasonably hired an independent contractor (Corbin-Dykes) to correct that dangerous condition and in this course of action acted as a reasonably prudent person. In such a case, it could possibly escape liability entirely, but the act of Mountain States in hiring Corbin-Dykes to correct the dangerous condition goes solely to the issue of Mountain States' negligent breach of its duty to the original plaintiff and a lack of negligence on its part, and not, under our law, to whether it can seek indemnity from Corbin-Dykes.

We therefore hold that Mountain States' liability in this case, being predicated solely upon its own negligence which contributed to the liability creating event, precludes Mountain States from seeking indemnity against a third person who may also have been negligent based upon the Arizona decisions heretofore cited.

Mountain States has also raised the issue on appeal that its right to indemnity can rest upon the contractual relationship existing between itself and Corbin-Dykes. However, in its reply brief Mountain States admits that its contract theory is "an adjunct to and supplements" its theory previously advanced that Corbin-Dykes was "primarily and actively negligent with respect to a liability causing event." Since we have held that regardless of Corbin-Dykes' "primary and active negligence", Mountain States is precluded from seeking indemnity

from Corbin-Dykes because of its own alleged negligence, we need not further explore this argument, no expressed or implied contract of indemnity having been shown.

For the foregoing reasons, the judgment of the trial court is affirmed.

WREN, Acting P. J., and FROEB, J., concur.