919 P.2d 1381

Chris **HERSTAM, Receiver and Mark D. Tharp, Special Deputy Receiver of Farm & Home Life Insurance Company, an Arizona insurer, in Receivership, Petitioners–Appellees,**

**and**

James M. **Fail and Emily S. Fail, husband and wife; Denny T. Lett and Wynon L. Lett, husband and wife; Charles D. Casper, Clifford G. Smith and Kathryn F. Smith, husband and wife; Harry T. Carneal; Thornton E. Cole; Fred E. Jones; Robert I. Boykin and Marcia Boykin, husband and wife; Michael Shannon;**

Lifeshares Group, Inc., a Nebraska corporation; LSC–Marketing, Inc., a Nebraska corporation; NPL Corporation, an Arizona corporation; Michael Sullo; Theodore Darling, Respondents–Appellees,

v.

DELOITTE & TOUCHE, LLP, a Connecticut general partnership; R. David Martin, Jr. and Bonnie Martin, husband and wife; Todd Brown; Jones, Day, Reavis & Pogue, an Ohio general partnership; David R. Baker; Theodore Kessner; Crosby, Guenzel, Davis, Kessner & Kuester, a Nebraska general partnership; Robert B. Crosby; Robert C. Guenzel; Donn E. Davis; William D. Kuester; Steven G. Seglin; Mark D. McGuire; Scott J. Norby; Alvin R. Townsend, Sr. and Janice T. Townsend, husband and wife; Pima Capital Company, an Arizona corporation, Respondents–Appellants.

Chris Herstam, Receiver, and Mark D. Tharp, Special Deputy Receiver, of Farm and Home Life Insurance Company, an Arizona insurer, in Receivership, Petitioners–Appellees,

and

James M. Fail and Emily S. Fail, husband and wife; Alvin Randall Townsend, Sr., and Janice T. Townsend, husband and wife; Denny L. Lett and Wynon L. Lett, husband and wife; Charles D. Casper; Clifford G. Smith and Kathryn F. Smith, husband and wife; Harry T. Carneal, Thornton E. Cole; Fred E. Jones; Robert I. Boykin and Marcia Boykin, husband and wife; Michael Shannon; Lifeshares Group, Inc., a Nebraska corporation; LSC–Marketing, Inc., a Nebraska corporation; NPL Corporation, an Arizona corporation; Pima Capital Co., an Arizona corporation; David R. Baker and Myra M. Baker, husband and wife; Jones, Day, Reavis & Pogue, an Ohio general partnership; Chadbourne & Parke, a general partnership; R. David Martin, Jr., and Bonnie Martin,

husband and wife; Todd Brown and Jane Doe Brown, husband and wife; Deloitte & Touche, a Connecticut general partnership; Touche Ross & Co., a general partnership; Michael Sullo; Theodore Darling, Respondents–Appellees,

Theodore L. Kessner; Robert B. Crosby; Robert C. Guenzel; Donn E. Davis; William D. Kuester; Steven G. Seglin; Mark D. McGuire; Scott J. Norby; Crosby, Guenzel, Davis, Kessner & Kuester, a Nebraska general partnership, Respondents–Appellants.

Nos. 1 CA–CV 95–0189, 1 CA–CV 95–0339.

Court of Appeals of Arizona,
Division 1, Department A.

April 11, 1996.

Review Denied July 2, 1996.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Robert G. Beshears, Robert J. Itri, Christopher Robbins, Phoenix, for Appellant Jones, Day, Reavis & Pogue.

Warner, Angle, Roper & Hallam, P.C. by Jerry L. Angle, Jerome K. Elwell, Chris R. Baniszewski, Phoenix, for Appellant David R. Baker.

Brown & Bain, P.A. by H. Michael Clyde, Lynne C. Adams, Steven R. Rodgers, Phoenix, for Appellants Deloitte & Touche LLP, R. David Martin, Jr., Bonnie Martin and Todd Brown.

Deloitte & Touche by Genevieve Harris Roche, New York City, for Appellants Deloitte, Martin and Brown.

Broening, Oberg, Woods, Wilson & Cass by John W. Oberg, Michael M. Haran, Kathleen Fawcett Collins, Phoenix, for Appellants Kessner and Crosby, Guenzel.

Bonnett, Fairbourn, Friedman & Balint, P.C. by Jerry C. Bonnett, Scott A. Erickson, Phoenix, for Appellants Townsend and Pima Capital Company.

Fennemore Craig, P.C. by F. Pendleton Gaines, III, Mark H. Brain, Phoenix, for Appellees Chadbourne & Parke.

Mohr, Hackett, Pederson, Randolph, Blakley & Haga, P.C. by Robert C. Hackett, John R. Hoopes, Carolyn R. Matthews, Phoenix and Arnold & Porter by Howard N. Cayne, Thomas R. Dwyer, Washington, DC, for Appellees Fail, Lifeshares, NPL, LSC–Marketing, Inc.

Frederick C. Berry, Jr., P.C. by Frederick C. Berry, Phoenix, for Appellees Smith, Casper, Lett, Carneal and Boykin.

Leonard Collins & Kelly, P.C. by Jeffrey S. Leonard, John C. Kelly, Phoenix, for Appellees Jones, Cole, and Shannon.

Copple, Chamberlin & Boehm, P.C. by Robert S. Murphy, Phoenix, and Charles E. Dorr, P.C. by Charles E. Dorr, Duluth, Georgia, for Appellees Sullo and Darling.

Glover & Van Cott, P.A. by Michael R. Glover, Joyce N. Van Cott, Ryan J. Talamante, Phoenix, for Appellees–Receiver.

Guttilla & Murphy, P.C. by Nicholas C. Guttilla, Phoenix, for Appellees.

## OPINION

TOCI, Judge.

By statute, tortfeasors who act in concert are jointly and severally liable for the resulting injury or damage. Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–2506(D)(1), (E) (Supp.1995). A joint tortfeasor who pays more than his or her share of the common liability is entitled to contribution from fellow tortfeasors. A.R.S. section 12–2501 (1994). These consolidated appeals raise the following novel issue: can a party allegedly damaged by the concerted action of numerous parties waive the joint liability of both the settling and nonsettling parties and, by formal settlement agreements, hold the nonsettling parties *only severally liable*, thereby precluding the nonsettling parties' rights to contribution?

The appeals arise out of lawsuits filed by the receiver of an insolvent insurance company against the company's former directors, officers, accountants, and attorneys, alleging that they acted in concert to injure the company. The nonsettling parties challenge the settlement agreements on the ground that they eliminate rights of contribution or indemnity between the settling and nonsettling groups and eliminate any setoff in favor of the nonsettling parties for damages paid by the settling group. The nonsettling parties contend that the receiver cannot alter the statutory imperative of joint *and* several liability. Thus, they contend that the trial court erred in failing to hold a good faith hearing. The nonsettling parties also assert that the settlement agreements unfairly bar contribution and indemnity claims. Finally, they argue that they are entitled to a credit against their ultimate liability for the amounts paid to the receiver by the settling parties.

We hold that because the statute confers a benefit on the receiver as representative of the injured insurance company, he is entitled to waive that statutory benefit and to proceed against the nonsettling tortfeasors severally. Therefore, the nonsettling parties have no right of contribution against the settling parties, no implied rights of indemnity, and no right to a credit for the sums paid by the settling parties. We affirm the trial court's entry of the challenged Approval, Bar, and Dismissal Orders.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1990, the Arizona Department of Insurance placed Farm and Home Life Insurance Company ("FHLIC") in receivership. The court approved the appointment of Chris

---

1. The receiver filed a motion to dismiss the appeals from the Approval and Dismissal Orders, which we denied before having an opportunity to review the case at length. We address that motion in this opinion at II. E.

Herstam, Director of the Arizona Department of Insurance, and of Mark Tharp, deputy receiver, ("the receiver" or "petitioner"). In March 1992, the receiver filed suit against the insurance company's former directors, officers, employees, affiliates, shareholders ("the Fail group"), and some of its attorneys and accountants for damages in excess of the company's $101 million insolvency.

After extended negotiations, the receiver entered a settlement agreement with the Fail group. In exchange for payment of $78.8 million, the receiver agreed to discharge the group from all liability. In order to insulate the group from claims asserted by the nonsettling parties, the settlement agreement imposed a mutual ban and permanent injunction on all contribution claims between any nonsettling and settling party and on indemnity claims other than those existing under statute or any relevant by-laws or articles of incorporation. The receiver promised that no nonsettling party would be held liable for the fault of any of the Fail group members and that the Fail group would be non-parties at fault in any future liability determinations. The receiver, however, reserved the right to seek joint liability among and between the nonsettling parties.

The receiver filed a second lawsuit against some of FHLIC's attorneys. Chadbourne & Parke and a former partner of the firm and his wife, David and Myra Baker, ("the Chadbourne, Parke group"), entered a settlement agreement to discharge their liability in exchange for payment of $350,000. The nonsettling parties in this lawsuit include Robert Crosby, Robert Gunzel, Donn Davis, William Kuester, Steven Seglin, Mark McGuire, and Scott Norby, members of a Nebraska law firm; and the general partnership, Crosby, Guenzel, Davis, Kessner & Kuester. Aside from the difference in the cash amount, the settlement agreements involving the Chadbourne, Parke group and the Fail group were virtually identical.

In approving the settlements, the court found, "entry of a Good Faith Order [wa]s not a necessary prerequisite" to entry of an order barring claims for contribution or indemnification between the settling and the nonsettling groups. It held that under the

Approval and Bar Orders, no nonsettling party would be held liable for the fault of any settling party, and further, that no nonsettling party would be "entitled to a *pro tanto* judgment reduction credit for any amount paid by or collected from any member" of the settling groups.

The receiver then filed a second amended complaint against the nonsettling parties. The complaint alleges claims against the nonsettling parties for fraud, conversion, constructive fraud or breach of fiduciary duty, aiding and abetting of such fraud or breach, negligent misrepresentation, negligence, negligence *per se,* fraudulent transfer, and civil racketeering. The complaint is subject to the terms of the Bar Order: no nonsettling party is liable for the fault of any settling party under a theory of joint liability. Additionally, the complaint provides, "In all determinations of liability to be made by the trier of fact as between the Settling Respondents and the Non–Settling Respondents, the Settling Respondents will be treated as nonparties at fault under A.R.S. § 12–2506."

This court has jurisdiction under A.R.S. sections 12–120.21(A)(1) (1992) and 12–2101(B), (F)(2) (1994). We review the trial court's interpretation of the Arizona Uniform Contribution Among Tortfeasors ("UCATA") statutes, A.R.S. sections 12–2501 through 12–2509, *de novo. Libra Group, Inc. v. State,* 167 Ariz. 176, 179, 805 P.2d 409, 412 (App. 1991).

## II. DISCUSSION

### A. Waiver of Joint and Several Liability

We first address the primary issue: when a complaint alleges concerted action that normally would subject all parties to joint and several liability, can the injured party waive the right to hold the nonsettling parties jointly liable and thereby bar the nonsettling parties from seeking contribution and indemnity from the settling parties?

Under the common law doctrine of joint and several liability, if two or more actors together caused an injury to the victim, each was liable for the full amount of the victim's injuries. *Roland v. Bernstein,* 171 Ariz. 96, 97, 828 P.2d 1237, 1238 (App.1991); W. Page

Keeton et al., *Prosser and Keeton on the Law of Torts* § 46, at 323 (5th ed. 1984). The doctrine favored the plaintiff victim by not requiring proof of the portion of damages caused by each of multiple defendants. Jefferson L. Lankford & Douglas A. Blaze, *The Law of Negligence in Arizona* § 6.1, at 138 (1992). That one defendant's conduct contributed more to the plaintiff's injury than the conduct of the others did not matter; each was liable for all of the damages.

Additionally, joint liability placed the risk that one or more of the tortfeasors might be insolvent on the other tortfeasors, rather than on the plaintiff. *Id.* § 6.2(1), at 141. The plaintiff could recover all of the damages from any solvent tortfeasor, regardless of that tortfeasor's percentage of fault. Once the victim fully recovered for his injury from one culpable actor, the victim could not seek another recovery from any other joint actor. *See* Keeton et al., § 48 at 330 (plaintiff was entitled to compensation for loss only once; a satisfied claim barred any further recovery and prevented unjust enrichment). Nor, however, could the tortfeasor who satisfied the victim's claim seek contribution from fellow actors.[2]

The inequities in joint liability led to a number of legislative efforts to ameliorate its effects. To more equitably distribute payment for jointly caused damages, many jurisdictions, including Arizona, adopted statutes expressly permitting contribution among joint tortfeasors. Under A.R.S. section 12–2501, a jointly liable tortfeasor "who has paid more than his pro rata share of the common liability" may seek contribution from the other tortfeasors. A.R.S. § 12–2501(B). Further recognition of the unfairness of forcing a defendant to pay for injury caused not only by himself but by others led Arizona in 1987 to virtually abolish joint and several liability, thereby eliminating the need for contribu-

tion. *PAM Transport v. Freightliner Corp.*, 182 Ariz. 132, 133, 893 P.2d 1295, 1296 (1995).

Section 12–2506(D) (Supp.1995), however, retains the doctrine of joint liability for persons acting in concert and further provides that a principal is responsible for the acts of the agent.[3] With respect to persons acting in concert, the statute perpetuates the common law policy of placing the risk of an insolvent tortfeasor on the other tortfeasors and removes the plaintiff's obligation to precisely prove which defendant inflicted which portion of an injury. In addition, vicarious liability of a principal for an agent "reflects a policy decision that certain people should be held responsible legally, despite a lack of active negligence on their part...." Lankford & Blaze, § 6.3 at 150–51. These policies embodied in the statute are for the benefit of the injured plaintiff.

We now turn to the question whether an injured plaintiff may waive the benefit of section 12–2506(D). We begin by observing that, in other circumstances, we have permitted the waiver of advantageous statutory provisions by the intended beneficiaries. For example, the statutes of limitations "are declarations of public policy as well as a private right...." *Zuckerman v. Transamerica Ins. Co.*, 133 Ariz. 139, 143, 650 P.2d 441, 445 (1982) (quoting *Ross v. Ross*, 96 Ariz. 249, 252, 393 P.2d 933, 934 (1964)). Thus, parties are at liberty by contract to shorten the limitations period provided by statute. *Id.* at 144, 650 P.2d at 446. *See also Holmes v. Graves*, 83 Ariz. 174, 178, 318 P.2d 354, 356–57 (1957) (procedural rule requiring a creditor to provide a detailed accounting in order to recover on an open account is for private benefit of debtor and may be waived by debtor); *McClellan Mortgage Co. v. Storey*, 146 Ariz. 185, 188, 704 P.2d 826, 829 (App.1985) (guarantors could

---

**2.** Because of the perceived unfairness of such a result, the common law concept of indemnity permitted the shifting of responsibility from one person to another. Keeton § 51, at 344.

**3.** A.R.S. section 12–2506(D) states:
The liability of each defendant is several only and is not joint, except that:
1. A party is responsible for the fault of another person, or for payment of the proportionate

share of another person, if both the party and the other person were acting in concert or if the other person was acting as an agent or servant of the party.
2. Nothing in this section prohibits the imposition of joint and several liability in a cause of action relating to hazardous wastes or substances or solid waste disposal sites.

waive an affirmative statutory defense enacted for their benefit in order to receive a loan); *In re Estate of Henry*, 6 Ariz.App. 183, 186–87, 430 P.2d 937, 940–41 (1967) (husband's waiver of right to share in wife's estate also waived statutory right to be appointed administrator of her estate). As we observed in *McClellan Mortgage Co.*, "Statutory provisions enacted for the benefit of individuals may be so far waived by those for whose benefit they were enacted that they are estopped to insist upon their protection." 146 Ariz at 188, 704 P.2d at 829 (quoting *Holmes v. Graves*, 83 Ariz. at 178, 318 P.2d at 357).

Public policy considerations also support the receiver's agreement waiving the joint liability of the nonsettling parties. "It has always been the policy of the law to favor compromise and settlement...." *Dansby v. Buck*, 92 Ariz. 1, 11, 373 P.2d 1, 8 (1962); *see also Shell Oil Co. v. Christie*, 125 Ariz. 38, 39, 607 P.2d 21, 22 (App.1979) (settlement of litigation is favored). In a case like this, with numerous parties and a complaint that exceeds 500 pages, even a partial compromise without the necessity of trial benefits both the parties and the court and should be encouraged.

The receiver's promise to protect the settling parties from contribution or indemnity by eliminating joint liability claims was undoubtedly a substantial inducement to the settlement; the receiver's inability to make such a promise would have greatly diminished the Fail group's incentive to compromise. The receiver had to weigh the certainty of a fixed partial payment for FSLIC's losses and of simplified trial issues against the possibility of a larger recovery in a lengthy trial involving additional parties and more complex issues. We cannot say the receiver's analysis was unreasonable, and we find no countervailing public policy that will suffer as a result of this compromise.

Furthermore, waiver of joint liability results in no inequity to the nonsettling parties. If the receiver were successful in a trial involving all of these parties, he could place the entire burden of the loss on a party who was only slightly at fault. A.R.S. § 12–2506(D)(1). By limiting the liability of the nonsettling parties to their proportionate degrees of fault,[4] however, the settlement agreements attempt to more fairly distribute the liability for FHLIC's losses, without any possibility of a collusive settlement in favor of the settling parties.

The nonsettling parties argue that joint liability cannot be waived because damages from concerted action "are inherently incapable of non-arbitrary apportionment." The UCATA itself refutes this argument. If in this case the receiver had chosen to hold the respondents jointly liable for concerted tortious action, the nonsettling parties could obtain contribution only if they paid more than their pro rata share of the common liability. A.R.S. § 12–2501. In making that determination, the fact finder must determine the pro rata share of each tortfeasor in the entire liability. A.R.S. § 12–2502 (1994). Thus, the allocation of fault for purposes of obtaining contribution in a joint liability case is no different than the allocation of fault in a case of several-only liability. *Compare id.* (contribution based on pro rata shares of tortfeasors in entire liability) *with* A.R.S. § 12–2506(A) (fact finder allocates liability for damages to each actor "in direct proportion to that person's percentage of fault").

The complaint, Bar Order, and trial court minute entry reflect this proportional allocation principle. The second amended complaint states that no nonsettling party is liable for the fault of any settling party. Similarly, the Bar Order provides that the receiver may assert claims for several liability "based upon such Non–Settling Party's percentage or relative degree of fault." The trial court's minute entry of October 6, 1994, ordered that the settlement "will limit [the receiver's] recovery against each nonsettling ... Respondent to that Respondent's proportionate degree of fault."

In sum, we believe that the legislature, in creating an exception to several-only liability for concerted action torts, intended to benefit

4. Fault is defined as "an actionable breach of legal duty, act or omission" in A.R.S. § 12–2506(F)(2).

injured plaintiffs but did not thereby give an inalienable *right* to multiple tortfeasors to be held jointly liable. Therefore, the receiver could relinquish the right to hold the nonsettling parties jointly liable with the settling parties; the trial court did not err in approving settlement provisions designed to achieve this end.

## B. Extinguishment of Right to Contribution From Settling Parties Without Good–Faith Hearing

■ The nonsettling parties assert that their rights to contribution have been unfairly extinguished by the settlements. As we discuss above, to obtain contribution, a nonsettling party must be found jointly liable with a settling party *and* must have paid more than its pro rata share of the entire liability. A.R.S. § 12–2501(B); *PAM Transport*, 182 Ariz. at 133, 893 P.2d at 1296. Under these settlements, a nonsettling party will neither be jointly liable with a settling party nor will such party pay any portion of a settling party's liability. Thus, no nonsettling party can obtain contribution from a settling party.[5] When a tortfeasor's liability is allocated on the basis of his or her percentage of the total fault of all parties, that tortfeasor has no right of contribution. *See Roland*, 171 Ariz. at 97, 828 P.2d at 1238.

■ The nonsettling parties further contend that they were entitled to a good-faith hearing as a *quid pro quo* for loss of their contribution rights. A.R.S. section 12–2504 (1994) governs releases or covenants not to sue "given in good faith to one of two or more persons liable in tort for the same injury...." It provides that a release does not discharge the other tortfeasors from liability but "reduces the claim against the others to the extent of any amount stipulated by the release ... or in the amount of consideration paid for it, whichever is greater." A.R.S. § 12–2504(1).

From this, the nonsettling parties contend that the court was obligated to hold a good-faith hearing before it could deprive them of

contribution from the settling parties. *See also* Ariz.R.Civ.P. 16.1 ("In any action where it is alleged that two or more parties are joint tortfeasors, and a settlement is entered by any of the parties to the action, the court, upon petition of any party shall make a formal determination whether the settlement is made in good faith."). Because the settlement agreements provided that the nonsettling parties, will not be jointly liable with the settling parties, the release was not given to persons or entities "liable in tort [with the nonsettling parties] for the same injury." A.R.S. § 12–2504.

We acknowledge that giving a nonsettling, *jointly* -liable tortfeasor a credit for the settling party's payment for the release of liability protects against collusion and unfairness. Such unfairness might result if a settlement is intentionally disproportionate to the settling party's degree of fault; but here, no nonsettling party will be liable for any settling party's fault. The trial court properly found that a good-faith hearing is not necessary to protect against a disproportionate settlement.

## C. Authority to Bar Nonsettling Parties' Rights to Indemnity from Settling Parties

The nonsettling parties contend that the settlements deprive them of significant property interests in claims for indemnity without due process. They assert rights of indemnity from a variety of sources: a common law theory based on a distinction between active and passive joint tortfeasors, an implied contractual theory based on the Restatement of Restitution, and a principal/agent theory. For reasons explained below, we find no taking of a substantive right or property interest without due process.

■ Indemnity allows one who has discharged a *common* liability to seek reimbursement in full from another. Keeton et al., *supra*, § 51, at 341. "[I]ndemnity is an all or nothing proposition damage-wise, and

---

5. The nonsettling parties may be jointly and severally liable between and among themselves. We assume without deciding that, as between themselves, one nonsettling party would be entitled to

contribution from another nonsettling party under the conditions specified in A.R.S. § 12–2501(B).

hence should be an all or nothing proposition fault-wise." *Transcon Lines v. Barnes*, 17 Ariz.App. 428, 435, 498 P.2d 502, 509 (1972). Its purpose is neither to apportion damages nor to balance relative degrees of fault, *id.*, but "to give full restitution to one who pays damages but is without personal fault." *Id.* at 437, 498 P.2d at 511. It permits one defendant to shift the entire loss to one who more justly deserves it. Keeton et al., *supra*, § 51, at 344.

■ The continued viability of the notion relied upon by the nonsettling parties that an actively negligent tortfeasor must indemnify a passively negligent joint tortfeasor is very much in doubt. Although *Busy Bee Buffet, Inc. v. Ferrell*, 82 Ariz. 192, 310 P.2d 817 (1957), is cited for this proposition, subsequent interpretations of that case insist that "the one seeking indemnity *not be personally at fault in any way* . . . ." *Transcon*, 17 Ariz.App. at 431, 498 P.2d at 505. Indemnity exists "only where the whole of the fault was in the one against whom indemnity is sought." *Id.* at 435, 498 P.2d at 509. *See also Pinal County v. Adams*, 13 Ariz.App. 571, 573–74, 479 P.2d 718, 720–21 (1971) (*Busy Bee* does not mean that a less negligent joint tortfeasor can be indemnified by one whose negligence was greater; rather, "when the indemnitee, *solely* through the negligence of the indemnitor, breaches his duty to . . . invitees, indemnity is available.").

We find that the court orders in this case do not violate a common law indemnity right stemming from *Busy Bee*. Severally-liable nonsettling parties who will not have to pay for damages beyond each one's own percentage of fault also will not have a basis for claiming indemnity from the settling parties. Keeton et al., § 51 at 344 (comparative fault principles have caused modification of the law of indemnity). Further, if a nonsettling party is innocent of all fault, that party pays nothing and does not need indemnification. *See Transcon*, 17 Ariz.App. at 437, 498 P.2d at 511.

■ The same logic applies to the claims of indemnity based on implied contract or agent/principal theories. Implied contractual indemnity may exist "when an agent, *through no wrongdoing of his own,*

incurs liability for an act performed on behalf of a principal." *INA Ins. Co. of N. Amer. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 252, 722 P.2d 975, 979 (App.1986) (emphasis added). One seeking indemnity "must be proven free from negligence . . . ." *Id.* at 255, 722 P.2d at 982. *See also Schweber Elec. v. National Semiconductor Corp.*, 174 Ariz. 406, 410, 850 P.2d 119, 123 (App.1992) (cases and the Restatement of Restitution all recognize that under implied indemnity, an indemnitee "must be innocent of any independent wrong or breach").

The settlement agreements provide and the trial court ordered that the nonsettling parties would be held liable *only* to the extent that they are at fault. Thus, the nonsettling parties cannot be held liable to the receiver for acting innocently at the direction of the settling parties. If the trier of fact finds the nonsettling parties are wholly without fault, they will have no liability to the receiver and no need for implied indemnity. On the other hand, an allocation of any portion of fault to them will foreclose a right to implied common law indemnity from the settling parties. Because the settlement agreements are premised on neither a settling nor nonsettling party paying for fault attributable to the other, we cannot foresee an equitable justification for shifting a nonsettling party's portion of damages entirely to a settling party.

### D. Violation of the Single–Recovery Rule

■ The nonsettling parties argue that they are entitled to credit against their own liability for the sums paid by the settling parties and that a double recovery or windfall violates the single-recovery rule. Having decided that the receiver may waive the right to hold the nonsettling parties jointly liable with the settling parties, we hold that the claim reduction provided for in A.R.S. section 12–2504 for jointly-liable parties does not apply. Moreover, no other authority exists for reducing the nonsettling parties' liability by the settling parties' settlement payments.

Section 12–2504 states, "[i]f a release or covenant not to sue or not to enforce judgment is given in good faith" to some but not

all actors who are *jointly* liable for a single injury, the release will reduce the claim against the others "in the amount of the consideration paid" for the release. (Emphasis added). Because the settlement agreements negate joint liability between these two groups, no right of contribution exists, and no corresponding right to a credit for settlement sums paid by other alleged tortfeasors exists.

In a recent several-liability case, this court rejected the application of the single-recovery rule. "The ... rule ... was adopted when courts could not allocate liability among defendants; a settling defendant could only offer to pay for a plaintiff's entire, indivisible injury. Now, the respective shares of the liability of multiple defendants can be determined." *Neil v. Kavena,* 176 Ariz. 93, 97, 859 P.2d 203, 207 (App.1993) (citation omitted). In *Neil,* the single-recovery rule did not give the nonsettling hospital a credit for the malpractice settlement paid by another physician and insurance company. Under several-liability concepts, the settlement would affect neither the harm caused by the nonsettling party nor its liability. *Id.* Similarly, in *Roland,* a nonsettling neurosurgeon was not entitled to credit for settlements paid by an independently-liable anesthesiologist and hospital. 171 Ariz. at 97–98, 828 P.2d at 1238–39.

The nonsettling parties argue that to permit the receiver to potentially recover more than the total amount of damages is unfair. As the court stated in *Roland,* if the plaintiff makes a disadvantageous settlement, she is nevertheless limited by that settlement and cannot recover any more even if the jury allocates a greater percentage of fault to the settling party and a lesser percentage to the nonsettling party. *Id.* "At a minimum, symmetry requires that if the disadvantage of settlement is hers so ought the advantage be.... [W]e see no reason why a nonsettling tortfeasor ought to escape the liability that is his by reason of the faulty assessment of probabilities by a settling tortfeasor." *Id.* We agree.

The nonsettling parties also argue that the receiver's status as an "agent of government" compels a different result. They cite no authority for creating an exception in this circumstance, and we have found none.

### E. Motion To Dismiss and Request for Sanctions

■ The receiver asks that we reconsider our denial of their motion to dismiss the nonsettling parties' appeals from the Approval and Dismissal Orders. In the motion, the receiver argued that those appeals were unnecessary to challenge the bar to contribution and indemnity claims, were frivolous, and were filed for the purpose of thwarting or delaying the scheduled payment of the Fail group settlement funds. On appeal, the receiver reurges the motion to dismiss and seeks unspecified sanctions under Rule 25, Arizona Rules of Civil Appellate Procedure. That rule permits the court to award reasonable penalties or damages against an attorney or party for a frivolous appeal or one taken solely for the purpose of delay.

We conclude the receiver's position is hypertechnical; the appeals from the Approval and Dismissal Orders were not frivolous. It is the settlement agreements themselves that gave rise to the issue in these cases—whether the receiver could contract away the joint liability of nonsettling parties in favor of apportionment of their individual fault. Because the settlement agreements were contingent upon entry of an Approval and a Dismissal Order, the Approval and Dismissal Orders are inextricably tied to the settlement agreements. Furthermore, the Bar Orders are rooted in the settlement agreements. We believe that a reasonable appellate practitioner would appeal from the Approval, Dismissal, and the Bar Orders. Thus, an award of sanctions is not appropriate.

### F. Attorney's Fees Incurred in the Appeal

■ In their answering brief, Chadbourne & Parke seek recovery of their attorney's fees incurred in connection with this appeal under A.R.S. section 12–341.01 (1992), which permits the court to award fees to the successful party in "any contested action arising out of contract." Townsend and Pima Capital in their joint reply brief also seek attorney's fees under Rule 21(c), Arizona Rules of Civil Appellate Procedure, and

A.R.S. sections 12–341.01 and 12–348(A)(1) (1992). Jones, Day, Reavis & Pogue, David R. Baker, Theodore Kessner, and Crosby, Guenzel, Davis, Kessner & Kuester request fees on the same basis.

In this case, even if we were to agree that the appeals arose out of contracts consisting of the settlement agreements, the nonsettling parties are not the prevailing parties. For similar reasons, they are not entitled to fees under A.R.S. section 12–348, which permits the award of fees "to any party other than this state ... which prevails by an adjudication on the merits...."

## CONCLUSION

For the reasons stated above, we find no error in the trial court's interpretation of the relevant Arizona statutes nor in the entry of the Approval, Settlement, and Bar Orders challenged here. In the exercise of our discretion, we decline to award sanctions. Further, we decline to award attorney's fees incurred in this appeal.

CONTRERAS, P.J., and WEISBERG, J., concur.